IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW JERSEY

| | | |
|---|---|---|
| BRG HARRISON LOFTS URBAN RENEWAL, LLC | : | |
| | : | CASE NO. 2:16-CV-06577-SRC-CLW |
| Plaintiff | : | |
| vs. | : | |
| | : | |
| GENERAL ELECTRIC COMPANY, | : | |
| ENVIRONMENTAL WASTE | : | |
| MANAGEMENT ASSOCIATES, LLC, | : | |
| and ACCREDITED ENVIRONMENTAL | : | |
| TECHNOLOGIES, INC., | : | |
| Defendants | : | |
| | : | |

| | | |
|---|---|---|
| EVANSTON INSURANCE COMPANY. | : | |
| | : | CASE NO. 2:17-CV-01584-JMV-JBC |
| Plaintiff | : | |
| vs. | : | |
| | : | |
| ACCREDITED ENVIRONMENTAL | : | |
| TECHNOLOGIES, INC., | : | |
| ENVIRONMENTAL WASTE | : | |
| MANAGEMENT ASSOCIATES, LLC, | : | |
| and BRG HARRISON LOFTS URBAN | : | |
| RENEWAL, LLC | : | |
| Defendants | : | |

**DEFENDANT, ACCREDITED ENVIRONMENTAL TECHNOLOGIES, INC.'S,
MEMORANDUM OF LAW IN SUPPORT OF NOTICE OF MOTION FOR AN ORDER
ALLOWING ACCREDITED ENVIRONMENTAL TECHNOLOGIES,
INC. TO JOIN THIRD-PARTY DEFENDANTS IN A THIRD-PARTY COMPLAINT**

-----------------------------------------------------------------------------------------------

LEONARD, SCIOLLA, HUTCHISON,
LEONARD AND TINARI, LLP
72 East Main Street
Moorestown, New Jersey 08057
Telephone: (856) 273-6679
Attorneys for Defendant, Accredited
Environmental Technologies, Inc.

## TABLE OF CONTENTS

**Page(s)**

I.     PRELIMINARY STATEMENT……………………………….………….……..…….1

II.    PROCEDURAL BACKGROUND……………………………….……………...…..1

III.   FACTUAL BACKGROUND……………………………………………….…..…..2

IV.    LEGAL ARGUMENT…………………………………………………………......3

V.     CONCLUSION……………………………………………….……………….5

## <u>TABLE OF AUTHORITIES</u>

<u>**Federal Cases**</u>                                                                                    <u>**Page(s)**</u>

<u>Spencer v. Cannon Equip. Co.</u>
    No. 07-2437 (JBS), 2009 U.S. Dist. LEXIS 55370, at *6 (D.N.J. June 29, 2009)….…..3

<u>Remington Arms Co. v. Liberty Mut. Ins. Co.</u>
    748 F. Supp. 1057, 1068 (D. Del. 1990)……………………….………………………..4

<u>Wells Fargo Bank, N.A. v. CCC Atl., LLC</u>
    No. 12-00521 (JEI/JS), 2013 U.S. Dist. LEXIS 116131, at *8 (D.N.J. Aug. 13, 2013)..4

<u>**Federal Rules of Civil Procedure**</u>

Fed R. Civ. P. 14(a)…………………………………………….……….….………………..3

<u>**Local Civil Rules**</u>

Local Civ. R. 7.1(f)……………………………………………….…..…………….………3

## I.    PRELIMINARY STATEMENT

Defendant, Accredited Environmental Technologies, Inc. (hereinafter "AET"), by and through its undersigned attorney, Keith N. Leonard, Esquire, hereby submits the instant Memorandum of Law in support of its Notice of Motion for Leave to join J. S. Braddock Agency and Edgehill Special Risk, Inc. as Third Party Defendants (the "Motion"). Capitalized terms in this Memorandum of Law will refer to the same parties or things as defined in AET's (Notice of) Motion and Certification in support thereof.

## II.    PROCEDURAL BACKGROUND

On October 6, 2016, a Complaint was filed against AET and other defendants by plaintiff, BRG Harrison Lofts Urban Renewal, LLC, in this Court, in an action docketed as <u>BRG Harrison Lofts Urban Renewal, LLC v. Accredited Environmental Technologies, Inc., et al</u>, D. NJ., Docket No.: 2:16-CV-06577-SRC-CLW (hereinafter the "BRG Action"). The BRG Action involves a claim for alleged Negligence/Malpractice against AET, as well as related claims against the other defendants, by plaintiff, BRG Harrison Lofts Urban Renewal, LLC ("BRG"), arising out of AET's alleged negligence in conducting a mercury vapor survey at a property purchased by BRG as part of the due diligence process. Environmental Waste Management Associates, LLC ("EWMA") is also named as a defendant in connection with these claims.

On March 10, 2017, a separate Complaint was filed, also in this Court, against AET, EWMA and BRG by plaintiff, Evanston Insurance Company, in an action docketed as <u>Evanston Insurance Company v. Accredited Environmental Technologies, Inc., et al</u>, D. NJ., Docket No.: 2:17-CV-01584-JMV-JBC (hereinafter the "EIC Action"). The EIC Action involves claims asserted by AET's insurance company, Evanston Insurance Company (hereinafter "EIC"), seeking a declaratory judgment that it is not required to provide insurance coverage for the claims asserted

1

against AET and EWMA in the BRG Action. EIC also alleges certain fraud-based claims against AET. On July 14, 2017, this Honorable Court issued an Order consolidating the BRG Action and the EIC Action. Subsequently thereto, a Second Amended Case Management Order was issued which states that any motion to add new parties, whether by amended or third-party complaint, must be filed no later than January 17, 2018. In accordance therewith, AET now files the instant Motion, along with its proposed Third-Party Complaint and a supporting Certification, a true and correct copy of the Proposed Complaint is attached thereto as Exhibit "1."

## III.   FACTUAL BACKGROUND

The EIC Action involves, inter alia, EIC seeking a declaratory judgment against AET and EWMA absolving it of its contractual obligation to provide insurance coverage for AET in the BRG Action. See EIC's Complaint, a true and correct copy of which is attached hereto as Exhibit "A." EIC originally provided coverage for AET in the BRG Action, but subsequently withdrew said coverage in the middle of litigation. EIC's Complaint contains two allegations: first, that AET did not properly put EIC on notice of the underlying claim in the BRG Action in a timely fashion; and second, that AET committed fraud by allegedly failing to disclose information which indicated AET was on notice of a possible lawsuit arising out of its work. EIC claims AET did not put EIC on notice of the BRG claim until October, 26, 2016, when the BRG Action was instituted by way of Complaint. However, and as alleged in AET's Answer, AET had previously submitted notice of a potential claim on February 5, 2016 through its insurance broker, J.S. Braddock Agency ("Braddock"), and its surplus lines broker, Edgehill Special Risk ("Edgehill"). This was the date that AET received a letter from EWMA stating, inter alia, that EWMA was placing AET on notice, and that EWMA was reserving all rights to commence an action against AET. In reliance upon Braddock and/or Edgehill, AET believed that notice of the claim(s) had been made to Evanston no

later than February 2016 and such belief seemed to be confirmed when Evanston assigned counsel to AET to handle its defense of the claims being made against AET in BRG Action. Braddock has alleged that, on or about February 10, 2016, it notified Edgehill (by and through the person of James (Jim) Ward at Edgehill of the claim(s) being alleged against AET which should be covered by AET's insurance policy(ies) with Evanston.

Braddock has further alleged that Edgehill claims it in turn notified Evanston (through its claims servicing agent, Markel). However, Braddock did not otherwise take any action to notify Evanston of the claims made against AET as set out in the BRG Complaint filed in the BRG Action.  Further, Braddock did not take any action to obtain written confirmation of any notice to Evanston purportedly done by Edgehill in February 2016.  Braddock also did not take any action at or near that time to confirm with Evanston and/or Markel that notice of the claim had been timely received by them and that the claim was being assigned to a Markel or Evanston representative for handling and any investigation.  Finally, Evanston alleges that it was never notified about the potential claim(s) by either Edgehill or Braddock.

## IV.   **LEGAL ARGUMENT**

Rule 14(a) of the Federal Rules of Civil Procedure provides that:

> A defending party may, as third-party plaintiff, serve a summons and complaint on a nonparty who is or may be liable to it for all or part of the claim against it. But the third-party plaintiff must, by motion, obtain the court's leave if it files the third-party complaint more than 14 days after serving its original answer.

Fed. R. Civ. P. 14(a); see also Local Civ. R. 7.1(f)

The purpose of Rule 14(a) is to avoid circuity of action and multiplicity of litigation. Spencer v. Cannon Equip. Co., No. 07-2437 (JBS), 2009 U.S. Dist. LEXIS 55370, at *6 (D.N.J. June 29, 2009).  "However, joinder of third-party defendants under Rule 14 is not automatic; rather, the decision to permit joinder rests with the sound discretion of the trial court."  Id. (quoting

3

Remington Arms Co. v. Liberty Mut. Ins. Co., 748 F. Supp. 1057, 1068 (D. Del. 1990)). A defendant may join a third-party defendant "only when the third party's liability is in some way dependent on the outcome of the main claim or when the third party is secondarily liable to defendant. Wells Fargo Bank, N.A. v. CCC Atl., LLC, No. 12-00521 (JEI/JS), 2013 U.S. Dist. LEXIS 116131, at *8 (D.N.J. Aug. 13, 2013). Finally, Courts consider the following factors to determine whether impleader should be permitted: 1) the timeliness of the motion; 2) the probability of trial delay; 3) the potential for complication of issues at trial and 4) prejudice to the original plaintiff. Id. at 12.

As described hereinbefore, this Honorable Court set January 17, 2018 as the deadline for the filing of any motions which seek to add new parties. While the filing of the instant motion prior to the Court prescribed deadline is certainly indicative of its timeliness, it is still nevertheless within the Court's discretion to join Braddock and Edgehill has third-party Defendants. In the instant matter, due to the early stage of litigation, there is no probability of trial delay. Indeed, the discovery end date is April 26, 2018, over three months from the filing of this motion. Moreover, the relevant documents are already in the possession of AET, Braddock, and Edgehill. Thus, paper discovery will be limited. Likewise, there is no potential for complication of any issues at trial as the issues remain the same. Finally, there is no prejudice to the original plaintiff with the joining of Braddock and Edgehill has third-party defendants. Braddock, Edgehill, and the plaintiff have all been in communication regarding the aforementioned issues, specifically the issue of notice, in the EIC Action for the last two years.

AET vehemently denies the allegations as set forth in EIC's Complaint. However, to the extent that declaratory judgment is entered in favor of EIC absolving it of its obligation to provide AET with coverage in the BRG Action, AET asserts claims of negligence and breach of contract

4

against both Braddock and Edgehill for their collective failure to properly notify EIC in a timely manner of the claims asserted in the BRG Action. To the extent that AET might possibly be held liable with regard to EIC's allegations of fraud, AET is entitled to indemnification and/or contribution from Braddock for its failure to disclose its knowledge of the claims in the BRG Action to EIC on the insurance application submitted to EIC on AET's behalf and/or advise AET that it needed to be disclosed at that time. Simply put, either Braddock and Edgehill breached their duty to AET by failing to put EIC on notice of the claim AET properly submitted to Braddock and Edgehill, or, in the alternative, EIC has incorrectly claimed that the Complaint in the BRG Action was the first time it was put on notice of the claim. Accordingly, in order to bring in all parties necessary for a full adjudication of the EIC Action in the consolidated case, it is necessary for AET to formally assert its Third-Party Complaint for negligence, indemnity, and contribution against Braddock and Edgehill for those damages alleged by EIC.

## V.    <u>CONCLUSION</u>

Based upon the foregoing facts and legal principles, granting AET leave to file a third-party complaint against Braddock and Edgehill will serve to promote judicial efficiency. The foregoing motion and memorandum of law in support thereof have been submitted in a timely fashion in accordance with this Honorable Court's Second Amended Scheduling Order. The Plaintiff will not be prejudiced by AET's assertion of claims against Braddock and Edgehill for contribution and/or indemnity. AET therefore respectfully requests that this Honorable Court grant the instant Motion.

Respectfully submitted,

**LEONARD, SCIOLLA, HUTCHISON,**
**LEONARD & TINARI, LLP**

By: */s/ Keith N. Leonard*
Keith N. Leonard, Esquire
72 East Main Street
Moorestown, New Jersey 08057
Telephone: (856) 273-6679
Fax: (856) 273-0109
E-mail: kleonard@leonardsciolla.com
*Attorney for Defendant,*
*Accredited Environmental*
*Technologies, Inc.*

Dated: January 17, 2018

# EXHIBIT A

RIVKIN RADLER LLP
21 MAIN STREET, SUITE 158
COURT PLAZA SOUTH – WEST WING
HACKENSACK, NEW JERSEY 07601
T. 201-287-2460
F. 201-489-0495
Attorneys for Plaintiff,
Evanston Insurance Company

UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

| | |
|---|---|
| EVANSTON INSURANCE COMPANY,<br><br>Plaintiff,<br><br>v.<br><br>ACCREDITED ENVIRONMENTAL TECHNOLOGIES, INC., ENVIRONMENTAL WASTE MANAGEMENT ASSOCIATES, LLC, and BRG HARRISON LOFTS URBAN RENEWAL LLC<br><br>Defendant. | Civil Action<br><br>Case No. _____<br><br>COMPLAINT |

Plaintiff, Evanston Insurance Company ("Evanston"), by way of Complaint against the Defendant, Accredited Environmental Technologies, Inc. ("AET") and Defendant, Environmental Waste Management Associates, LLC ("EWMA"), states:

## NATURE OF THE COMPLAINT

1.      This action seeks a declaratory judgment, pursuant to the Federal Declaratory Judgment Act, 28 U.S.C. § 2201 and 2202, as to the rights and obligations of the parties under insurance policies issued by Evanston with respect to claims for insurance coverage by AET and

EWMA in connection with alleged responsibility for environmental contamination at 400 South 5th Street, Harrison, New Jersey ("Site").

## THE PARTIES

2.      Plaintiff, Evanston Insurance Company is an insurance company incorporated in the State of Illinois with its principal place of business in Deerfield, Illinois.

3.      Defendant, Accredited Environmental Technologies, Inc. is a Pennsylvania corporation with its principal place of business located at 28 Pennell Road, Media, Pennsylvania.

4.      Environmental Waste Management Associates, LLC is a New Jersey limited liability company with its principal place of business located at Lanidex Plaza, 100 Misty Lane, Parsippany, New Jersey.

5.      BRG Harrison Lofts Urban Renewal LLC ("BRG") is a New Jersey limited liability company with its principal place of business located at 307 Frank E. Rodgers Boulevard South, Harrison, New Jersey and an interested party to this proceeding.

## JURISDICTION AND VENUE

6.      This Court has jurisdiction over this action pursuant to 28 U.S.C. § 1332(a)(1) inasmuch as this action is between citizens of different states and the amount in controversy exceeds the sum or value of $75,000, exclusive of interest and costs.

7.      Venue in this District is appropriate pursuant to 28 U.S.C. § 1391, as the District of New Jersey is the District where the Defendants reside and/or conducts business and because this is the District where a substantial amount of the activities forming the basis of this Complaint occurred.

2

## BACKGROUND

8.     BRG Harrison Lofts Urban Renewal LLC and certain of its affiliates ("BRG")

allege that BRG retained EWMA to perform a Preliminary Assessment at the Site.

9.     EWMA allegedly subcontracted portions of the work for BRG to others.

10.    On or about March 14, 2012, AET submitted a technical and cost proposal to

provide EWMA with environmental consulting and analytical services in conjunction with the

Site (the "AET Proposal").

11.    The AET Proposal involved the performance of "an OSHA Compliance lead-

based paint survey of the three structures and utilizing a direct reading mercury vapor meter to

check for the presence of residual mercury contamination in the warehouse/manufacturing

portions of the structures."

12.    Incorporated as part of the AET Proposal were AET's "Standard Terms and

Conditions", which included the following:

> 6.     INDEMNIFICATION-HOLD  HARMLESS:  The  Consultant
> [AET] shall not undertake any contractual duty or liability to
> indemnify for or on account of, any claim, suit, loss, damage,
> liability or expense.

13.    Upon information and belief, pursuant to the AET Proposal, AET surveyed the

interior of Buildings A, B and C at the Site for the presence of mercury.

14.    BRG alleges that on or about August 9, 2012, AET provided EWMA with a

report in connection with its sampling for mercury the interior of Buildings A, B and C at the

Site ("AET Mercury Report").

15.    The AET Mercury Report allegedly reported mercury vapors in only two isolated

locations on the third floor of Building C.

3

16.     In August 2012, EWMA allegedly issued an Asbestos Lead Paint and Mercury Vapor Survey Memo.

17.     BRG alleges that on or about January 31, 2013, EWMA submitted a Preliminary Assessment Report to BRG for the Site ("PAR Report").

18.     BRG alleges that EWMA's PAR Report relied upon and included the AET Mercury Report.

19.     BRG alleges that subsequent investigation revealed presence of mercury contamination that was not identified in the AET Mercury Report.

20.     By letter dated November 19, 2015, addressed to EWMA and AET, counsel for BRG placed EWMA and AET on notice of a potential claim ("BRG Notice Letter").

21.     In the November 19, 2015 BRG Notice Letter, BRG alleged that it "relied on EWMA's Preliminary Assessment Report and AET's Mercury Report to its detriment and has incurred and will continue to incur costs associated with the investigation and potential remediation of the mercury contamination."

22.     On October 6, 2016, BRG filed an action caption *BRG Harrison Lofts Urban Renewal LLC v. General Electrical Company, et al.*, Civil Action No. 2:16-CV-06577 (the "Underlying Action") against General Electric Company ("GE"), EWMA and AET.

23.     On November 17, 2016, BRG filed its First Amended Complaint in the Underlying Action.

24.     Count One through Count Eight and Counts Eleven through Twelve of the First Amended Complaint are addressed to GE only.

25.     Count Nine of BRG's First Amended Complaint alleges professional negligence on the part of EWMA and AET.

4

26.     Count Ten of BRG's First Amended Complaint alleges breach of contract by EWMA.

27.     On December 16, 2016, EWMA filed an Answer to the First Amended Complaint and Crossclaims against GE and AET seeking Common-Law Contribution and Indemnification, and Statutory Contribution from GE and AET.

28.     In its Crossclaims, EWMA also seeks Contractual Indemnification from AET and alleges that AET breached an agreement between AET and EWMA by failing to provide insurance coverage and to indemnify EWMA as it relates to the claims asserted against EWMA by BRG in the First Amended Complaint.

AET's First Notice to Evanston

29.     On or about October 26, 2016, AET forwarded Evanston a copy of BRG's Complaint in the Underlying Action.

30.     AET did not provide Evanston with a copy of the November 19, 2015 BRG Notice Letter at the time it forwarded the copy of BRG's Complaint or at any time prior thereto.

31.     Based on the allegations of BRG's Complaint, it appeared that AET was entitled to a defense and indemnity in connection with the Underlying Action under the Professional Liability Coverage Part in Policy 16PKGNE60291.

32.     In light of the information provided by AET, Evanston engaged counsel to defend AET in the Underlying Action.

33.     Subsequent to the engagement of counsel to defend AET, Evanston received a copy of the November 19, 2015 BRG Notice Letter.

34.     It is now clear that, prior to the inception date of Policy 16PKGNE60291, AET was aware of a fact, event, circumstance, or condition which AET should have reasonably

5

foreseen would give rise to a claim under Policy 16PKGNE60291 and, as a result, the claims asserted by BRG are excluded under Policy 16PKGNE60291.

35.     By letter dated March 2, 2017, Evanston advised AET that it was withdrawing its defense of AET in the Underlying Action.

36.     In its March 2, 2017 letter, Evanston offered to continue to provide AET with a defense in the Underlying Action for 30 days, with AET's consent, or to withdraw immediately.

The Policies

37.     On December 8, 2015, Alan J. Sutherland, President of AET signed a Environmental Service Providers, Contractors, Consultants, Engineering and Professionals Combined Service Application on behalf of AET ("Policy Application").

38.     Question 1 in the General Information section of the Policy Application asks:

> Is the applicant aware of any circumstances which may result in any clam suit, or notice of incident against him, the firm, his predecessors in business, any of the present or past partners or officers, or any staff member, or has any claim, suit or notice of incident been made against the firm or any staff member?
> If yes, please provide full details of each incident.

39.     Sutherland answered this question in the negative.

40.     Sutherland's negative response to Question 1 in the General Information section of the Policy Application was false because, at least by virtue of the BRG Notice Letter, Sutherland was aware of circumstances which might result in a claim suit, or notice of incident against him or the firm and Sutherland had notice of incident made against the firm.

41.     The Policy Application included the following warranty:

**WARRANTY STATEMENT**

> The undersigned authorized officer of the applicant declares that the statements set forth herein are true. The undersigned authorized agrees that if the information supplied on the application changes between the

6

date of the application and the effective date of the insurance, he/she (undersigned) will immediately notify the insurer of such changes, and the insurer may withdraw or modify any outstanding quotations and/or authorization or agreement to bind the insurance. Signing of this application does not bind the applicant to the insurer to complete the insurance.

I warrant that the information contained in this application is true and that it will form the basis of and be incorporated into the final policy, if issued.

42.     Evanston issued the following primary package policies to AET:

| Policy No. | Policy Period |
| --- | --- |
| 16PKGNE60291 | January 1, 2016 to January 1, 2017 |
| 15PKGNE60291 | January 1, 2015 to January 1, 2016 |
| 14PKGNE60291 | January 1, 2014 to January 1, 2015 |
| 13PKG02018 | January 1, 2013 to January 1, 2014 |
| 12PKG02018 | January 1, 2012 to January 1, 2013 |
| 11PKG02018 | January 1, 2011 to January 1, 2012 |

(the "Package Policies").

43.     Evanston issued the following follow form excess policies to AET:

| Policy No. | Policy Period |
| --- | --- |
| 16EFXNE60139 | January 1, 2016 to January 1, 2017 |
| 15EFXNE60139 | January 1, 2015 to January 1, 2016 |
| 14EFXNE60139 | January 1, 2014 to January 1, 2015 |
| 13EFX00171 | January 1, 2013 to January 1, 2014 |
| 12EFX00171 | January 1, 2012 to January 1, 2013 |
| 11EFX00171 | January 1, 2011 to January 1, 2012 |

(the "Follow Form Excess Policies").

44.     The Package Policies provided Professional Liability on a claims made and reported basis and Commercial General Liability and Contractors Pollution Liability coverage on an occurrence basis.

Environmental Professional Liability Coverage under Policy 16PKGNE60291

45.     The Environmental Professional Liability insuring agreement in Policy 16PKGNE60291 states in relevant part as follows:

7

**Professional Liability**

1. **Insuring Agreement**

   a. We will pay those sums that the insured becomes legally obligated to pay as damages because of "claims" that result from the rendering or failure to render "professional services" for others to which this insurance applies. We have the right and duty to defend the insured against any "suit" seeking those damages. However, we have no duty to defend the insured against any "suit" seeking damages arising of "claims" that result from rendering or failure to render "professional services" to which this insurance does not apply. We may, at our discretion, investigate any "claims" and settle any "claim" or "suit" that may result. But:

      (1) The amount we will pay for damages is limited as described in **SECTION III – LIMITS OF INSURANCE AND DEDUCTIBLE**; and

      (2) Our right and duty to defend end when we have exhausted the applicable limit of insurance in the payment of judgments, settlements or supplementary payments.

   b. This insurance applies to "claims" that result from the rendering or failure to render "professional services" only if:

      (1) The damages are caused by an alleged or actual act, error, or omission that takes place in the "coverage territory"; and

      (2) The alleged or actual act, error, or omission takes place. on or after the Retroactive Date, if any, shown in the Declarations and before the end of the policy period; and

      (3) The "claim" is first made against any insured and reported to us during the policy period or Extended Reporting Period, if exercised, and the insured reports such "claim" to us in accordance with Item **1. Duties In The Event Of an Incident, Claim Or Suit**, in **SECTION IV – CONDITIONS**.

46.    The Professional Liability Coverage part of Policy 16PKGNE60291 contains the following definitions:

2.    "Claim" or "claims" means a request or a demand received by the insured or by us for money or services, including but not limited to the institution of "suit" or arbitration proceedings against the insured, seeking damages arising

8

from an actual or alleged act, error or omission in the rendering or the failure to render "professional services".

\*\*\*

8.   "Professional services" means those functions performed for others by you or on your behalf for a fee that are related to your practice as a consultant, engineer, architect, surveyor, laboratory, project or construction manager and as disclosed on the application or specifically endorsed hereon to this Coverage Form, including but not limited to the preparation or approval of maps, drawings, opinions, reports, surveys, designs, specifications or engineering services.

47.   The Professional Liability Coverage part of Policy 16PKGNE60291 contains the following exclusion:

2.   **Exclusions**

This insurance does not apply to:

\*\*\*

a. **Prior Claims.** "Claims" first made against you prior to the inception of this Coverage Form;

\*\*\*

f. **Known Circumstances.** "Claims" based upon or arising out of any:

(1) Fact, event, circumstance, or condition known by a "responsible insured" prior to the inception date of this Coverage Form where the "responsible insured" should have reasonably foreseen that such fact, event, circumstance, or condition would give rise to a "claim" under this Coverage Form; or

(2) Rendering or failure to render "professional services" prior to the inception date of this Coverage Form, if any "responsible insured" knew or should have reasonably foreseen that such rendering or failure to render "professional services" would give rise to a "claim" under this Coverage Form.

9

\*\*\*

    h. **Contractual Liability.** "Claims" based upon or arising out of the liability of others assumed by a Named Insured under any contract or agreement including, but not limited to, hold harmless and indemnity clauses, warranties, guarantees, certifications or penalty clauses; provided however, this exclusion shall not apply to liability the Named Insured would have in the absence of the contract or agreement by reason of an alleged or actual act, error omission by the insured in the rendering of "professional services".

48.    There is no coverage under Professional Liability Coverage part of Policy 16PKGNE60291 because, among other reasons, AET was aware of a fact, event, circumstance, or condition which AET should have reasonably foreseen would give rise to a claim under Policy 16PKGNE60291 and the claims were made prior to the inception of Policy 16PKGNE60291.

49.    There is no coverage for AET in connection with EWMA's claims for indemnification because, among other reasons, AET was aware of a fact, event, circumstance, or condition which AET should have reasonably foreseen would give rise to a claim under Policy 16PKGNE60291, the claims were made prior to the inception of Policy 16PKGNE60291 and such claims are excluded by the Contractual Liability exclusion.

Environmental Professional Liability Coverage under Policy 15PKGNE60291

50.    The Professional Liability insuring agreement, definitions and exclusions in Policy 15PKGNE60291 are the same as the insuring agreement, definitions and exclusions in Policy 16PKGNE60291.

51.    There is no coverage under Professional Liability Coverage part of Policy 15PKGNE60291 because, among other reasons, AET did not report the BRG or EWMA claims during the 15PKGNE60291 policy period.

52.     There is no coverage under Professional Liability Coverage part of any of the other Package Policies because, among other reasons, AET did not report a claim during their respective policy periods.

<u>Contractors Pollution Liability Coverage</u>

53.     The Contractors Pollution Liability insuring agreement in 16PKGNE60291, 15PKGNE60291, 14PKGNE60291 and 13PKG02018 contains the following Insuring Agreement language under Section I – Coverages, Contractor's Pollution Liability, which provides, in relevant part, as follows:

**SECTION I - COVERAGES**

**Contractor's Pollution Liability**

1.  **Insuring Agreement**

    a.  We will pay those sums that the insured becomes legally obligated to pay as damages because of "bodily injury" or "property damage" to which this insurance applies. We will have the right and duty to defend the insured against any "suit" seeking those damages. However, we will have no duty to defend the insured against any "suit" seeking damages to which this insurance does not apply. We may, at our discretion, investigate any "claims" and settle any "claim" or "suit" that may result. But:

        (1) The amount we will pay for damages is limited as described in **SECTION III – LIMITS OF INSURANCE AND DEDUCTIBLE**; and

        (2) Our right and duty to defend end when we have used up the applicable limit of insurance in the payment of judgments, settlements or supplementary payments.

    b.  This insurance applies to "bodily injury" and "property damage" only if:

        (1) The "bodily injury" or "property damage" is caused by an "pollution condition" arising out of "your work" that takes place in the "coverage territory"; and

11

    (2) The "bodily injury" or "property damage" occurs during the policy period; and

    (3) The "bodily injury" or "property damage" arises out of "your work" performed during the policy period, except for "bodily injury" or "property damage" arising out of the "completed operations" of "your work."

    (4) Prior to the policy period, no insured listed under Paragraph **1.** of **SECTION II – WHO IS AN INSURED** and no "responsible insured" knew that the "bodily injury" or "property damage" had occurred, in whole or in part. If such a listed insured or "responsible insured" knew, prior to the policy period, that the "bodily injury" or "property damage" occurred, then any continuation, change or resumption of such "bodily injury" or "property damage" during or after the policy period will be deemed to have been known prior to the policy period.

c. "Bodily injury" or "property damage" which occurs during the policy period and was not, prior to the policy period, known to have occurred by any insured listed under Paragraph 1. of **SECTION II – WHO IS AN INSURED**, any "responsible insured" or any "employee" authorized by you to give or receive notice of an "occurrence" or "claim", includes any continuation, change or resumption of the "bodily injury" or "property damage" after the end of the policy period.

d. "Bodily injury" or "property damage" will be deemed to have been known to have occurred at the earliest time when any insured listed under Paragraph 1. of SECTION II – WHO IS AN INSURED or any "responsible insured" authorized by you to give or receive notice of an "occurrence" or "claim":

    (1) Reports all, or any part of, the "bodily injury" or "property damage" to us or any other insurer;

    (2) Receives a written or verbal demand or "claim" for damages because of the "bodily injury" or "property damage"; or

    (3) Becomes aware by any other means that "bodily injury" or "property damage" has occurred or has begun to occur.

e. Damages because of "bodily injury" include damages claimed by

12

any person or organization for care, loss of services or death resulting at any time from the "bodily injury".

55.     The Contractors Pollution Liability insuring agreement in 12PKG02018 and 11PKG02018 contains the following Insuring Agreement language under Section I – Coverages, Contractor's Pollution Liability, which provides, in relevant part, as follows:

## SECTION I - COVERAGES

**Contractor's Pollution Liability**

1. **Insuring Agreement**

   a. We will pay those sums that the insured becomes legally obligated to pay as damages because of "bodily injury" or "property damage" to which this insurance applies. We will have the right and duty to defend the insured against any "suit" seeking those damages. However, we will have no duty to defend the insured against any "suit" seeking damages to which this insurance does not apply. We may, at our discretion, investigate any "claims" and settle any "claim" or "suit" that may result. But:

      (1) The amount we will pay for damages is limited as described in **Limits of Insurance and Deductible (Section III)**; and

      (2) Our right and duty to defend end when we have used up the applicable limit of insurance in the payment of judgments, settlements or supplementary payments.

   b. This insurance applies to "bodily injury" and "property damage" only if:

      (1) The "bodily injury" or "property damage" is caused by a "pollution condition" arising out of "your work" that takes place in the "coverage territory; and

      (2) The "bodily injury" or "property damage" occurs during the policy period; and

      (3) The "bodily injury" or "property damage" arises out of "your work" performed during the policy period, except

13

for "bodily injury" or "property damage" arising out of the "completed operations" of "your work."

(4) Prior to the policy period, no insured listed under Paragraph 1. of **Section II – Who Is An Insured** and no "responsible insured" knew that the "bodily injury" or "property damage" had occurred, in whole or in part. If such a listed insured or "responsible insured" knew, prior to the policy period, that the "bodily injury" or "property damage" occurred, then any continuation, change or resumption of such "bodily injury" or "property damage" during or after the policy period will be deemed to have been known prior to the policy period.

c. "Bodily injury" or "property damage" which occurs during the policy period and was not, prior to the policy period, known to have occurred by any "responsible insured".

d. "Bodily injury" or "property damage" will be deemed to have been known to have occurred at the earliest time when any insured listed under Paragraph 1. of **Section II – Who Is An Insured** or any "responsible insured" authorized by you to give or receive notice of an "occurrence" or "claim":

(1) Reports all, or any part of, the "bodily injury" or "property damage" to us or any other insurer;

(2) Receives a written or verbal demand or "claim" for damages because of the "bodily injury" or "property damage"; or

(3) Becomes aware by any other means that "bodily injury" or "property damage" has occurred or has begun to occur.

e. Damages because of "bodily injury" include damages claimed by any person or organization for care, loss of services or death resulting at any time from the "bodily injury".

55.    The CPL Coverage under policies 16PKGNE60291, 15PKGNE60291, 14PKGNE60291 and 13PKG02018 contains the following exclusion:

2.    **Exclusions**

This insurance does not apply to:

14

\*     \*     \*

h.     **Professional Services.** "Bodily injury" or "property damage" arising out of any alleged or actual act, error or omission in the rendering of or failure to render "professional services" by you or any contractor or subcontractor working on your behalf. This exclusion does not apply to a "claim" in which you committed an actual or alleged act, error or omission relating to improper or inadequate supervision, direction or control of any subcontractors for which you are legally liable when performing operations on your behalf at a job site.

56.     The CPL Coverage under policies 12PKG02018 and 11PKG02018 contains the following exclusion:

2.     **Exclusions**

This insurance does not apply to:

\*     \*     \*

h.     **Professional Services.** "Bodily injury" or "property damage" arising out of the rendering of or failure to render professional services by you or any contractor or subcontractor working on your behalf, including the preparation or approval of maps, drawings, opinions, reports, surveys, designs, specifications or engineering services. This exclusion does not apply to improper or inadequate supervision of any subcontractors for which you are legally.

57.     There is no coverage under Contractors Pollution Liability Coverage part of the Package Policies because, among other reasons, the claim involves "property damage" arising out of the rendering of or failure to render professional services by AET.

Commercial General Liability Coverage

58.     The Commercial General Liability insuring agreement in 16PKGNE60291, 15PKGNE60291, 14PKGNE60291, 13PKG02018, 12PKG02018 and 11PKG02018 contains the

following Insuring Agreement language under Section I – Coverages, Contractor's Pollution Liability, which provides, in relevant part, as follows:

## SECTION I - COVERAGES

### COVERAGE A BODILY INJURY AND PROPERTY DAMAGE LIABILITY

1.  **Insuring Agreement**

a.  We will pay those sums that the insured becomes legally obligated to pay as damages because of "bodily injury" or "property damage" to which this insurance applies. We will have the right and duty to defend the insured against any "suit" seeking those damages. However, we will have no duty to defend the insured against any "suit" seeking damages for "bodily injury" or "property damage" to which this insurance does not apply. We may, at our discretion, investigate any "occurrence" and settle any claim or "suit" that may result. But:

(1) The amount we will pay for damages is limited as described in Section III - Limits of Insurance; and

(2) Our right and duty to defend ends when we have used up the applicable limit of insurance in the payment of judgments or settlements under Coverages **A** or **B** or medical expenses under Coverage **C**.

No other obligation or liability to pay sums or perform acts or services is covered unless explicitly provided for under Supplementary Payments – Coverages **A** and **B**.

b.  This insurance applies to "bodily injury" and "property damage" only if:

(1) The "bodily injury" or "property damage" is caused by an "occurrence" that takes place in the "coverage territory";

(2) The "bodily injury" or "property damage" occurs during the policy period; and

(3) Prior to the policy period, no insured listed under Paragraph **1**. of **Section II - Who Is An Insured** and no "employee" authorized by you to give or receive notice of an "occurrence" or claim, knew that the "bodily injury" or

16

"property damage" had occurred, in whole or in part. If such a listed insured or authorized "employee" knew, prior to the policy period, that the "bodily injury" or "property damage" occurred, then any continuation, change or resumption of such "bodily injury" or "property damage" during or after the policy period will be deemed to have been known prior to the policy period.

**c.** "Bodily injury" or "property damage" which occurs during the policy period and was not, prior to the policy period, known to have occurred by any insured listed under Paragraph 1. of Section II – Who Is An Insured or any "employee" authorized by you to give or receive notice of an "occurrence" or claim, includes any continuation, change or resumption of that "bodily injury" or "property damage" after the end of the policy period.

**d.** "Bodily injury" or "property damage" will be deemed to have been known to have occurred at the earliest time when any insured listed under Paragraph 1. of Section II – Who Is An Insured or any "employee" authorized by you to give or receive notice of an "occurrence" or claim:

**(1)** Reports all, or any part, of the "bodily injury" or "property damage" to us or any other insurer;

**(2)** Receives a written or verbal demand or claim for damages because of the "bodily injury" or "property damage"; or

**(3)** Becomes aware by any other means that "bodily injury" or "property damage" has occurred or has begun to occur.

**e.** Damages because of "bodily injury" include damages claimed by any person or organization for care, loss of services or death resulting at any time from the "bodily injury".

59.    The   Commercial   General   Coverage   under   policies   16PKGNE60291, 15PKGNE60291, 14PKGNE60291, 13PKG02018, 12PKG02018 and 11PKG02018 contains the following exclusion:

**2.    Exclusions**

This insurance does not apply to:

\*        \*        \*

17

**f.   Pollution**

1) "Bodily injury" or "property damage" arising out of the actual, alleged or threatened discharge, dispersal, seepage, migration, release or escape of "pollutants":

(a) At or from any premises, site or location which is or was at any time owned or occupied by, or rented or loaned to, any insured. However, this subparagraph does not apply to:

(i) "Bodily injury" if sustained within a building and caused by smoke, fumes, vapor or soot produced by or originating from equipment that is used to heat, cool or dehumidify the building, or equipment that is used to heat water for personal use, by the building's occupants or their guests;

(ii) "Bodily injury" or "property damage" for which you may be held liable, if you are a contractor and the owner or lessee of such premises, site or location has been added to your policy as an additional insured with respect to your ongoing operations performed for that additional insured at that premises, site or location and such premises, site or location is not and never was owned or occupied by, or rented or loaned to, any insured, other than that additional insured; or

(iii) "Bodily injury" or "property damage" arising out of heat, smoke or fumes from a "hostile fire";

(b) At or from any premises, site or location which is or was at any time used by or for any insured or others for the handling, storage, disposal, processing or treatment of waste;

18

(c) Which are or were at any time transported, handled, stored, treated, disposed of, or processed as waste by or for:

    (i) Any insured; or

    (ii) Any person or organization for whom you may be legally responsible; or

(d) At or from any premises, site or location on which any insured or any contractors or subcontractors working directly or indirectly on any insured's behalf are performing operations if the "pollutants" are brought on or to the premises, site or location in connection with such operations by such insured, contractor or subcontractor. However, this subparagraph does not apply to:

    (i) "Bodily injury" or "property damage" arising out of the escape of fuels, lubricants or other operating fluids which are needed to perform the normal electrical, hydraulic or mechanical functions necessary for the operation of "mobile equipment" or its parts, if such fuels, lubricants or other operating fluids escape from a vehicle part designed to hold, store or receive them. This exception does not apply if the "bodily injury" or "property damage" arises out of the intentional discharge, dispersal or release of the fuels, lubricants or other operating fluids, or if such fuels, lubricants or other operating fluids are brought on or to the premises, site or location with the intent that they be discharged, dispersed or released as part of the operations being performed by such insured, contractor or subcontractor;

    (ii) "Bodily injury" or "property damage" sustained within a building and caused by the release of gases, fumes or vapors

19

from materials brought into that building in connection with operations being performed by you or on your behalf by a contractor or subcontractor; or

**(iii)**"Bodily injury" or "property damage" arising out of heat, smoke or fumes from a "hostile fire".

**(e)** At or from any premises, site or location on which any insured or any contractors or subcontractors working directly or indirectly on any insured's behalf are performing operations if the operations are to test for, monitor, clean up, remove, contain, treat, detoxify or neutralize, or in any way respond to, or assess the effects of, "pollutants".

**(2)** Any loss, cost or expense arising out of any:

**(a)** Request, demand, order or statutory or regulatory requirement that any insured or others test for, monitor, clean up, remove, contain, treat, detoxify or neutralize, or in any way respond to, or assess the effects of, "pollutants"; or

**(b)** Claim or "suit" by or on behalf of a governmental authority for damages because of testing for, monitoring, cleaning up, removing, containing, treating, detoxifying or neutralizing, or in any way responding to, or assessing the effects of, "pollutants".

However, this paragraph does not apply to liability for damages because of "property damage" that the insured would have in the absence of such request, demand, order or statutory or regulatory requirement, or such claim or "suit" by or on behalf of a governmental authority.

60.    There is no coverage under Commercial General Liability Coverage part of the

Package Policies because, among other reasons, the claim involves property damage arising out

20

of the actual, alleged or threatened discharge, dispersal, seepage, migration, release or escape of pollutants at or from a site on which an insured was performing operations to test for, monitor, clean up or in any way respond to, or assess the effects of pollutants.

## COUNT I
### (Declaratory Judgment Claim as to EWMA)

61.     Evanston repeats and realleges all of the allegations set forth in paragraphs 1 through 60 of the Complaint as if set forth herein at length.

62.     Evanston brings this action seeking a declaration of its rights and obligations under the Policies with respect to the Underlying Action.

63.     EWMA is not a named insured under any of the Package Policies and/or Follow Form Excess Policies issued to AET.

64.     EWMA seeks additional insured coverage under one or more of the Package Policies and/or Follow Form Excess Policies issued to AET.

65.     Each of the additional insured provisions in the Package Policies requires that the written contract between the parties obligate AET to provide additional insured to the putative additional insured.

66.     AET performed the work at issue in the Underlying Action pursuant to "AET Proposal #2405NJ", which incorporated AET's "Standard Terms and Conditions."

67.     AET's "Standard Terms and Conditions" provide that:

> 6. INDEMNIFICATION-HOLD HARMLESS: The Consultant [AET] shall not undertake any contractual duty or liability to indemnify for or on account of, any claim, suit, loss, damage, liability or expense.

*See AET Proposal at Standard Terms and Conditions, ¶6.*

68. There is no additional insured coverage for EWMA under the Package Policies because, among other reasons, AET Proposal does not obligate AET to provide additional insured coverage to EWMA.

69. The Follow Form Excess Policies follow form to their respective underlying Package Policy.

70. There is no additional insured coverage for EWMA under the Follow Form Excess Policies because there is no additional insured coverage for EWMA under the respective Package Policies.

WHEREFORE, Evanston demands judgment declaring: (a) that there is no additional insured coverage for EWMA under the Package Policies or the Follow Form Excess Policies in connection with the Underlying Action; (b) that Evanston has no duty to defend or indemnify EWMA under the Package Policies or the Follow Form Excess Policies in connection with the Underlying Action; and (c) such other relief as the Court shall deem appropriate.

## COUNT II
### (Declaratory Judgment Claim as to AET and EWMA)

71. Evanston repeats and realleges all of the allegations set forth in paragraphs 1 through 70 of the Complaint as if set forth herein at length.

72. Evanston seeks a declaration that: 1) there is no duty to defend or indemnify AET or EWMA, even if it were entitle to coverage as an additional insured, in connection with the Underlying Action under the Package Policies or the Follow Form Excess Policies.

73. There is no coverage under Environmental Professional Liability coverage part of Policy 16PKGNE60291 because, among other reasons, AET was aware of a fact, event,

circumstance, or condition which AET should have reasonably foreseen would give rise to a claim under Policy 16PKGNE60291, the claims were made prior to the inception of Policy 16PKGNE60291 and such claims are excluded by the Contractual Liability exclusion.

74.   There is no coverage under the Environmental Professional Liability Policies 15PKGNE6029, 14PKGNE60291, 13PKG02018, 12PKG02018 or 11PKG02018 because, among other reasons, AET did not report the BRG or EWMA claims during their respective policy periods.

75.   There is no coverage under Contractors Pollution Liability Coverage part of the Package Policies because, among other reasons, the claim involves "property damage" arising out of the rendering of or failure to render professional services by AET.

76.   There is no coverage under Commercial General Liability Coverage part of the Package Policies because, among other reasons, the claim involves property damage arising out of the actual, alleged or threatened discharge, dispersal, seepage, migration, release or escape of pollutants at or from a site on which an insured was performing operations to test for, monitor, clean up or in any way respond to, or assess the effects of pollutants.

WHEREFORE, Evanston demands judgment declaring: (a) that Evanston has no duty to defend or indemnify AET or EWMA under the Package Policies or the Follow Form Excess Policies in connection with the Underlying Action; and (b) such other relief as the Court shall deem appropriate.

## COUNT III
### (IFPA Claim against AET)

77.   Evanston repeats and realleges all of the allegations set forth in paragraphs 1 through 76 of the Complaint as if set forth herein at length.

23

78.     New Jersey has a strong public policy against insurance fraud. This policy is manifested in a series of statutes, including the Insurance Fraud Prevention Act, N.J.S.A. 17:33A-1 et seq. (the "IFPA").

79.     A person violates the IFPA if, among other things, he:

(3) Conceals or knowingly fails to disclose the occurrence of an event which affects any person's initial or continued right or entitlement to (a) any insurance benefit or payment or (b) the amount of any benefit or payment to which the person is entitled;

(4) Prepares or makes any written or oral statement, intended to be presented to any insurance company or producer for the purpose of obtaining:

(a) a motor vehicle insurance policy, that the person to be insured maintains a principal residence in this State when, in fact, that person's principal residence is in a state other than this State; or

(b) an insurance policy, knowing that the statement contains any false or misleading information concerning any fact or thing material to an insurance application or contract; or

(5) Conceals or knowingly fails to disclose any evidence, written or oral, which may be relevant to a finding that a violation of the provisions of paragraph (4) of this subsection a. has or has not occurred.

*See* N.J.S.A. 17:33A-4.

80.     Violators of the IFPA are liable to the insurer for restitution, attorney's fees, and the reasonable costs of the insurer's investigation. *See* N.J.S.A 17:33A-7(a).

81.     AET has violated the IFPA by making one or more statements in the Policy Application that contained false or misleading information concerning facts material to the issuance of Policy 16PKGNE60291.

WHEREFORE, Evanston demands judgment against AET: (a) declaring that Evanston has no duty to defend or indemnify AET or EWMA under Policy 16PKGNE60291 in connection

with the Underlying Action; (b) in the amount of the costs and counsel fees incurred in connection with the investigation conducted by Evanston; and (c) for reimbursement of the costs and counsel fees associated with the prosecution of this litigation pursuant to N.J.S.A. 17:33A-7; and (d) such other relief as the Court shall deem appropriate.

## COUNT IV
### (Common Law Fraud Claim)

82.     Evanston repeats and realleges all of the allegations set forth in paragraphs 1 through 81 of the Complaint as if set forth herein at length.

83.     AET made one or more false statements in the Policy Application that contained false or misleading information concerning facts material to the issuance of Policy 16PKGNE60291.

84.     AET made these false statements knowingly and purposefully.

85.     AET intended that Evanston would rely on these statements in determining whether to issue Policy 16PKGNE60291 to AET.

86.     Evanston issued Policy 16PKGNE60291 to AET in reliance upon AET's false statements.

WHEREFORE, Evanston demands judgment against AET: (a) declaring that Evanston has no duty to defend or indemnify AET or EWMA under Policy 16PKGNE60291 in connection with the Underlying Action; (b) in the amount of the costs and counsel fees incurred in connection with the investigation conducted by Evanston; and (c) for reimbursement of the costs and counsel fees associated with the prosecution of this litigation pursuant to N.J.S.A. 17:33A-7; and (d) such other relief as the Court shall deem appropriate.

RIVKIN RADLER LLP

Attorneys for Plaintiff,
Evanston Insurance Company

Dated:  March 8, 2017                    By: _____
                                             Michael J. Jones, Esq.