

Connell Foley LLP
56 Livingston Avenue
Roseland, NJ 07068
P 973.535.0500   F 973.535.9217

May 4, 2020

**VIA ECF**
Honorable Cathy Waldor, U.S.M.J.
United States District Court, District of New Jersey
Martin Luther King Jr. Bldg. & U.S. Courthouse
50 Walnut Street
Newark, New Jersey 07101

    Re:    **BRG Harrison Lofts Urban Renewal LLC v. General Electric Company, et al**
             **Consolidated Action No. 16-cv-06577 (SRC/CLW)**

Dear Judge Waldor,

This firms represents defendant Environmental Waste Management Associates, LLC ("EWMA") in the above captioned matter. As discussed at the conference on April 23, 2020, please accept this letter brief in lieu of a more formal brief in support of EWMA's notice of motion for leave to file a Third Party Complaint against Langan Engineering and Environmental Services, Inc. ("Langan") and John Wood Group PLC as successor in interest to AMEC PLC ("AMEC"). A copy of the proposed Third Party Complaint is attached hereto for your reference.

For your reference, the parties have agreed to a briefing schedule whereby this motion was filed by May 4, 2020, any opposition thereto is to be filed by May 14, 2020, and reply papers are to be filed by May 21, 2020. We hope this meets the approval of the Court.

**I.**    **Factual and Procedural Background**

This action was filed Plaintiff BRG Harrison Lofts Urban Renewal, LLC ("Plaintiff") against various defendants, including EWMA, for alleged damages related to Plaintiff's purchase of and

Roseland   Jersey City   Newark   New York   Cherry Hill   Philadelphia
www.connellfoley.com
5419078-1

mercury contamination related to the property and three buildings located at 400 South 5th Street in Harrison, New Jersey (the "Property"), which were formerly owned by defendant General Electric Company ("GE").

EWMA and Plaintiff entered into an Environmental Services Agreement ("ESA") for certain environmental due diligence related to the Property in or around 2012. EWMA, in turn, retained defendant Accredited Environmental Technologies, Inc. ("AET") to conduct a mercury vapor survey of the buildings on the Property. Plaintiff alleges that AET negligently conducted the mercury vapor survey, that EWMA and AET negligently failed to fully detect the extent of the mercury contamination in the buildings, and that Plaintiff relied upon the "inaccurate" mercury vapor survey in deciding to purchase the Property. Plaintiff claims it was not aware of the actual extent of mercury contamination until after it purchased the property in June 2015.  EWMA has denied these allegations and liability for Plaintiff's claims in this matter.

### a.  AMEC's Alleged Liability

Proposed Third Party Defendant AMEC had information and knowledge, unavailable to EWMA, whereby they knew or should have known that the results of AET's 2012 mercury vapor survey may not reflect the extent of mercury contamination in the buildings on the Property. AMEC was retained by GE as Licensed Site Remediation Professional for the Property in or around 2013, and was responsible for the investigation and remediation of the Property through the sale of the Property to Plaintiff. GE retained AMEC to assume the lead role in implementing certain interim remedial actions related to soil, groundwater and vapor intrusion pathway concerns on the Property.

First, in or around July 2013, Plaintiff provided GE and AMEC with EWMA's environmental investigation work, including the mercury vapor survey by AET. In August 2013, sampling performed by AMEC on the first floor of Building C identified traces of mercury vapor, which was

not identified in AET's reporting. The results of AMEC's August 2013 sampling were shared with Plaintiff in August 2013. Despite this, AMEC did not recommend or conduct further mercury vapor air sampling in the buildings on the Property.

Further, per the allegations in Plaintiff's First Amended Complaint ("FAC"), AMEC conducted Remedial Investigation Sampling in 2014, including slab, soil and groundwater samples at the Property. AMEC issued a Preliminary Assessment Report ("PAR") in 2014. Despite AMEC's Plaintiff alleges that it relied upon the PAR in entering into an Indemnification and Settlement Agreement with GE regarding remediation of the Property.

Notably, per AMEC's 2014 PAR: (1) mercury was identified on the floor surface in connection with sumps and pits in Building B that had not previously been identified; and (2) mercury was detected in floor swipe samples within Building B at concentrations an order of magnitude above the Non-Residential Direct Contact Soil Remediation Standards ("NRDCSRS"). Subsequent soil samples beneath the floor detected mercury exceeding the Residential Direct Contact Soil Remediation Standards ("RDCSRS") which prompted sampling of the underlying soils. Despite this information, AMEC did not question or otherwise raise concerns about AET's mercury vapor survey, and AMEC did not recommend or conduct a further mercury vapor intrusion study.

Based upon AMEC's Remedial Investigation Sampling, 2013 sampling, and information available to AMEC by and through its client, GE, AMEC knew or should have known that the results of AET's mercury vapor survey were or could be inaccurate or otherwise needed further investigation and further knew or should have known that a further mercury vapor intrusion study was warranted. Yet AMEC advise EWMA that the results of the AET mercury vapor survey were potentially inaccurate or otherwise inconsistent with the sampling and investigation of AMEC with

May 4, 2020
Page 4

regard to mercury contamination on the Property, and did not recommend or conduct a further mercury vapor intrusion study.

Despite knowledge of the mercury vapor intrusion concerns outlined above, AMEC adopted and appended AET's analysis from EWMA's January 2013 PAR into its own report, which was shared with Plaintiff for an opportunity to review and comment prior to its submission to the NJDEP. AMEC not only had the same information and data pertaining to AET's manner and method of sampling as EWMA, it had significant additional information which EWMA did not have. Further, AMEC did not raise any issues or objections to the manner or methods of AET's mercury sampling. AMEC did not conduct a further mercury vapor intrusion study in the buildings on the Property, despite information from its own sampling and other sources that required such a study be performed. In fact, the FAC alleges that Plaintiff relied upon information provided by AMEC in negotiating an Indemnity and Settlement Agreement with GE and would not have entered into such an agreement had AMEC provided accurate information regarding the mercury contamination at the Property within the PAR.

In addition, AMEC is liable in this matter for other work it performed at the Property that exacerbated or caused the release of mercury vapors and/or contamination on the Property. As alleged in the FAC, the work and or services performed by AMEC with regard to stockpiles and underground storage tanks on the Property released mercury from the buildings into the environment, including but not limited to the use of ventilation fans in Buildings A and B on the Property over two years, cutting into and removing flooring in the buildings on the Property, and failing to take proper protective measures to prevent or minimize the release of mercury into the environment. AMEC knew or should have known that the work or services performed at the Property had a likelihood of releasing mercury into the environment, and failed to take such measures necessary to prevent or minimize the release of mercury into the environment.

5419078-1

May 4, 2020
Page 5

### b.     Langan's Alleged Liability

Langan was retained to replace EWMA as environmental consultant and LSRP on behalf of Plaintiff at the Property. However, Langan's retention was the result of EWMA Director and employee, Anthony Kaufman, resigning from EWMA on or about June 12, 2014 and commencing employment with Langan in August 2014. Mr. Kaufman, who was responsible for managing and overseeing EWMA's work with Plaintiff at the Property, took the Plaintiff's business to Langan. Langan was formally retained by Plaintiff in August 2014.

Langan, and in particular Mr. Kaufman, reviewed the August 2014 AMEC draft PAR and March 2015 RIR on behalf of Plaintiff, and provided consulting services and insight to Plaintiff regarding the environmental conditions at the Property. Langan not only had the same information and data pertaining to AET's manner and method of sampling as EWMA, it had significant additional information which EWMA did not have. Langan did not raise any issues or objections to the manner or methods of AET's mercury sampling.

Further, Langan continued to advise Plaintiff throughout its negotiations with GE that ultimately resulted in the parties' entry into the Indemnity and Settlement Agreement. Langan and Mr. Kaufman continued to provide consulting services to Plaintiff as it received additional environmental reports and data from GE and AMEC in early 2015, and in connection with Plaintiff's entry into the Settlement Agreement and Release in June of 2015. Any knowledge or conduct alleged as to EWMA applies equally to Langan by virtue of Mr. Kaufman, and any purported liability of EWMA is coextensive or vicarious of Langan's liability.

### c.   Procedural Background

Plaintiff filed the Complaint in this matter in 2016. Thereafter, the parties engaged in exchange of preliminary written discovery and documents, and then agreed to engage in mediation prior to further discovery or depositions, with the Court's approval.  Due to ongoing

5419078-1

mediation and settlement discussions, this case currently does not have a trial date, and the parties are proceeding with the depositions in the coverage matter due to this pending motion. EWMA now seeks leave to file a Third Party Complaint against Langan and AMEC.

## II.     EWMA Should Be Granted Leave to File A Third Party Complaint

### a.  The Legal Standard

A motion for leave to file a third party complaint is governed by Federal Rule of Civil Procedure 14(a). See, e.g., Ronson v. Talesnick, 33 F. Supp. 2d 347, 356 (D.N.J. 1999).  Rule 14(a) provides that "[a] defending party may, as third-party plaintiff, serve a summons and complaint on a nonparty who is or may be liable to it for all or part of the claim against it.  But the third-party plaintiff must, by motion, obtain the court's leave if it files the third-party complaint more than 14 days after serving its original answer."  Fed. R. Civ. P. 14(a).  An application pursuant to Rule 14(a) is similar to a motion for leave to amend pleadings pursuant to Rule 15(a) and is therefore governed by the same liberal standard.  Ryan v. Collucio, 183 F.R.D. 420, 423 (D.N.J. 1998); see also Fed. R. Civ. P. 15(a).

It is well settled that a third party claim may be asserted under Rule 14(a) "when the third party's liability is in some way dependent on the outcome of the main claim or when the third party is secondarily liable to defendant." F.D.I.C. v. Bathgate, 27 F.3d 850, 873 (3d Cir.1994); see also Ryan v. Collucio, 183 F.R.D. at 422.  Further, it has been stated that "the crucial characteristic of a Rule 14 third-party claim is that the original defendant is attempting to transfer to the third-party defendant all or part of the liability asserted against him by the original plaintiff."  In re One Meridian Plaza Fire Litigation, 820 F. Supp. 1492, 1496 (E.D.Pa.1993). Thus, "a true third-party complaint derives from the original plaintiff's direct action against the defendant/third-party

May 4, 2020
Page 7

plaintiff" and only where the claim is separate or independent from the main action, should impleader will be denied. Ryan v. Collucio, 183 F.R.D. at 422 (D.N.J. 1998).

Further, the purpose of Rule 14(a) is to "avoid circuity of action and multiplicity of litigation." Spencer v. Cannon Equip. Co., 2009 U.S. Dist. LEXIS 55370, at *6 (D.N.J. June 29, 2009). Rule 14 "strives to prevent a multiplicity of suits arising out of the same factual situation because it permits additional parties whose rights may be affected by the decision in the original action to be joined so as to expedite the final determination of the rights and liabilities of all the interested parties in one suit." Hitachi Capital Am. Corp. v. Nussbaum Sales Corp., 2010 U.S. Dist. LEXIS 30562, at *7 (D.N.J. Mar. 10, 2010) (inner quotations omitted).

Addressing the relevant standard of review when presented with an application pursuant to Rule 14(a), the standard for granting leave to file a Third Party Complaint is liberal:

> [A] motion for leave to file a Third-Party Complaint is essentially a motion for leave to amend pleadings. Leave to amend pleadings is liberally granted when justice so requires. The determination of a motion to amend falls within the sound discretion of the trial court and is guided by Rule 15(a). The Third Circuit Court of Appeals regards the possibility of prejudice to the nonmoving party as the "touchstone for the denial of the amendment." Absent undue prejudice, "denial must be grounded in bad faith or dilatory motives, truly undue or unexplained delay, repeated failure to cure deficiency by amendments previously allowed or futility of amendment." If the amendment fails as a matter of law to warrant any relief, leave to amend should be denied as futile.

Ryan v. Collucio, 183 F.R.D. at 423 (D.N.J. 1998) (internal citations omitted). In general, leave to file a third party complaint, where sought for purposes of transferring liability to a third party defendant, should be liberally granted and denied only where the non-moving party establishes undue prejudice, bad faith, or that the application is futile. Id.; see also Foman v. Davis, 371 U.S. 178, 182 (1962) (leave should be "freely given"); Kiser v. General Electric Corp., 831 F.2d 423, 427 (3rd Cir. 1987) (courts should grant leave with "great liberality").

Further, Courts have considered the following factors in exercising the discretion to implead parties: "(1) the timeliness of the motion; (2) the probability of trial delay; (3) the potential for complication of the issues at trial; (4) prejudice to the original plaintiff." Ronson v. Talesnick, 33 F. Supp. 2d at 356.

As set forth below, leave should be granted to EWMA to file a Third Party Complaint against Langan Engineering and Environmental Services, Inc. and John Wood Group PLC as successor in interest to AMEC PLC.

### b. EWMA's Proposed Third Party Claims Against Langan and AMEC Derives From Plaintiff's Claims Against EWMA

Plaintiff's FAC alleges that it purchased the Property relying and based upon inaccurate or incomplete information regarding the extent of mercury contamination in the buildings on the Property, and as a result has incurred damages. Plaintiff claims that EWMA's failed to detect the extent of mercury contamination in the buildings on the Property, and that the inaccurate information provided induced Plaintiff to purchase the Property. EWMA seeks to bring third party claims against Langan and AMEC as its alleged liability to Plaintiff is derivative or coextensive of the liability of these proposed third party defendants.

As to Langan, Mr. Kaufman, the critical employee in charge of EWMA's work for Plaintiff, left EWMA and thereafter continued his work for Plaintiff at Langan. As such, Mr. Kaufman was in the unique position of having the information and knowledge of both EWMA's work for Plaintiff and all the subsequent testing and investigation done for the Property while working at Langan. Therefore, Mr. Kaufman was in the unique position of having sufficient information to advise his client, Plaintiff, as to the inconsistencies between his own prior work at EWMA and his current work at Langan. In other words, Mr. Kaufman's liability by virtue of his work at EWMA transfers to Langan, where he fails to advise Plaintiff of the inconsistencies in sampling or otherwise indicate

May 4, 2020
Page 9

there may be any issues with the AET mercury vapor survey. Therefore, EWMA asserts that any liability as to EWMA in this matter is inextricably linked with Langan's conduct and liability, and the third party claims are appropriate.

As to AMEC, AMEC was the LSRP for the Property, and had information and knowledge by virtue of its client, GE and its own work and services performed at the Property, that a further mercury vapor intrusion study in the Property buildings was warranted and that AET's mercury vapor survey was inconsistent with AMEC's later sampling and information regarding mercury contamination in the buildings on the Property. EWMA asserts that to the extent EWMA is found liable as to the AET mercury vapor testing, AMEC is similarly liable for all or part of those damages due to its failure to advise or withholding of information it knew or should have known regarding the true extent of mercury contamination in the buildings on the Property.

Here, EWMA asserts that Langan and AMEC are liable for all or part of any alleged liability as to EWMA. Further, Langan and AMEC's liability relates directly to Plaintiff's claims in this matter, and arises from the same nexus of facts and claims.  Accordingly, permitting EWMA to file its Third Party Complaint - which sets forth viable claims for relief - will serve the purpose of Rule 14(a) to avoid circuity of action and multiplicity of litigation.

### c. EWMA's Motion is Timely, Will Not Delay or Complicate Issues at Trial and Will Not Prejudice the Plaintiff

As noted above, when determining whether or not granting leave to file a third party complaint is appropriate, the Court is to consider (1) the timeliness of the motion; (2) the probability of trial delay; (3) the potential for complication of the issues at trial; (4) prejudice to the original plaintiff.

First, allowing EWMA to file its Third Party Complaint will not, in any way, delay trial.  This matter is in its preliminary stages, and depositions have not yet occurred.  There is no trial date

5419078-1

May 4, 2020
Page 10

or other case deadlines that would be affected by the filing of this Third Party Complaint.  Third, there is no potential for complication of the issues at trial.  Rather, permitting EWMA's Third Party Complaint will serve the purpose of Rule 14(a) by expediting the final determination of the rights and liabilities of all the interested parties in one suit.  Lastly, there is no prejudice to Plaintiff and will likely benefit Plaintiff as the joinder of the Third Party Defendant reduces the multiplicity of litigation.  Moreover, Plaintiff was and is aware of EWMA's intent to file this Third Party Complaint.

### III.     Conclusion

Based upon the foregoing, EWMA respectfully requests that the Court grant its motion for leave to file the proposed Third Party Complaint against Langan Engineering and Environmental Services, Inc. and John Wood Group PLC as successor in interest to AMEC PLC.

Respectfully submitted,

*s/Timothy E. Corriston*

Timothy E. Corriston

cc: All Counsel (via ECF)

5419078-1