Timothy E. Corriston, Esq.
CONNELL FOLEY LLP
56 Livingston Avenue
Roseland, NJ 07068
(973) 535-0500
Fax: (973) 535-9217
*Attorneys for Defendant/Third Party Plaintiff,*
*Environmental Waste Management Associates, LLC*

# UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF NEW JERSEY

| | |
|---|---|
| BRG HARRISON LOFTS URBAN RENEWAL LLC, <br><br> Plaintiff, <br><br> v. <br><br> GENERAL ELECTRIC COMPANY, ENVIRONMENTAL WASTE MANAGEMENT ASSOCIATES, LLC and ACCREDITED ENVIRONMENTAL TECHNOLOGIES, INC. <br><br> Defendants. | Civ. Act. No. 2:16-cv-06577 <br><br><br> ***Electronically Filed*** <br><br><br> **Return Date: March 15, 2021** |
| ACCREDITED ENVIRONMENTAL TECHNOLOGIES, INC., <br><br> Third-Party Plaintiff, <br><br> v. <br><br> FIELD ENVIRONMENTAL INSTRUMENTS, INC. and ARIZONAINSTRUMENT LLC, <br><br> Third-Party Defendants. | |
| ENVIRONMENTAL WASTE MANAGEMENT ASSOCIATES, LLC, <br><br> Third-Party Plaintiff, <br> v. | |

5805903-3

LANGAN ENGINEERING AND
ENVIRONMENTAL SERVICES, INC.;
JOHN WOOD GROUP PLC as successor-
in-interest to AMEC PLC,

       Third-Party Defendants.

EVANSTON INSURANCE COMPANY,                                Civil Action No: 2:17-CV-01584

       Plaintiff,

v.

ENVIRONMENTAL WASTE
MANAGEMENT ASSOCIATES, LLC,
ACCREDITED ENVIRONMENTAL
TECHNOLOGIES, INC., and BRG
HARRISON LOFTS URBAN RENEWAL

LLC,

       Defendants.

ACCREDITED
ENVIRONMENTALTECHNOLOGIES,
INC.,

       Third-Party Plaintiff,
v.

J.S. BRADDOCK AGENCY,

       Third-Party Defendant.

J.S. BRADDOCK AGENCY,

       Fourth-Party Plaintiff,

v.

EDGEHILL SPECIAL RISK, INC.,

       Fourth-Party Defendant.

BRIEF ON BEHALF OF THIRD PARTY PLAINTIFF
ENVIRONMENTAL WASTE MANAGEGMENT ASSOCIATES
LLC IN SUPPORT OF MOTION FOR RECONSIDERATION

Timothy E. Corriston, Esq.
Connell Foley LLP
56 Livingston Avenue
Roseland, NJ 07068
973.535.0500
973.535.9217
*Attorneys for Defendant/ Third Party
Plaintiff, Environmental Waste
Management Associates, LLC*

*Of Counsel and On the Brief*:

Timothy E. Corriston, Esq.
Meghan K. Musso, Esq.
Jacquelyn N. Corsentino, Esq.

## <u>TABLE OF CONTENTS</u>

PRELIMINARY STATEMENT ............................................................. 1

LEGAL ARGUMENT ........................................................................ 4

POINT I ........................................................................................ 4

STANDARD OF REVIEW                                                    4

POINT II ....................................................................................... 5

RECONSIDERATION IS APPROPRIATE BECAUSE THE
COURT OVERLOOKED LEGAL AND FACTUAL ISSUES
THAT MAY ALTER THE DISPOSITION OF THIS MATTER               5

    A.      The Court Overlooked Pertinent Facts in its February
5, 2021 Opinion ................................................................6

        1.   Plaintiff's Allegations............................................6

        2.   Plaintiff's Allegations Against EWMA ............9

        3.   The Court Overlooked Langan's Concurrent Negligence in
its Role as EWMA's successor and its Additional Knowledge
Prior to Plaintiff Entering into the Two Vital Agreements ..............9

        4.   The Court Overlooked AMEC's Role as EWMA's
counterpart and its Additional Knowledge Prior to Plaintiff
Entering into the Two Vital Agreements ........................................12

        5.   The Court Overlooked that Plaintiff Suffered the Same Harm
from EWMA, AMEC, and Langan ................................................15

    B.      Based on Overlooking Pertinent Facts, the Court
Improperly Relied on *Cherry Hill* instead of *LaBracio*. ................18

POINT III ...................................................................................... 25

IN OVERLOOKING THESE PERTINENT FACTS AND LAW,
THE FEBRUARY 5, 2021 OPINION ERRED IN BY
DISMISSING THE COMPLAINT WITH PREJUDICE               25

CONCLUSION .............................................................................. 28

i

# <u>TABLE OF AUTHORITIES</u>

**Page(s)**

**Cases**

*Bowers v. Nat'l. Collegiate Athletics Ass'n.*, 130 F. Supp. 2d 610
(D.N.J. 2001).................................................................................................4

*Cartel Capital Corp. v. Fireco of New Jersey*, 81 N.J. 548 (1980)........................16

*Cherry Hill Manor Assocs. v. Faugno*, 182 N.J. 64 (2004)............................*passim*

*CMR D.N. Corp. v. City of Phila.*, 703 F.3d 612 (3d Cir. 2013)............................26

*Erkins v. Case Power & Equip. Co.*, 164 F.R.D. 31 (D.N.J. 1995) ........................16

*Grand St. Artists v. GE*, 19 F. Supp. 2d 242 (D.N.J. 1998)....................................13

*In re Hlywiak*, 573 F. Supp. 2d 871 (D.N.J. 2008)....................................................5

*Interfaith Cmty. Org. v. Honeywell Int'l., Inc.*, 215 F. Supp. 2d 482
(D.N.J. 2002).................................................................................................4

*LaBracio Family P'ship v. 1239 Roosevelt Ave., Inc.*, 340 N.J. Super.
155 (App. Div. 2001).............................................................................*passim*

*Lazaridis v. Wehmer*, 591 F.3d 666 (3d Cir. 2010) ..................................................5

*Max's Seafood Cafe ex rel. Lou-Ann, Inc. v. Quinteros*, 176 F.3d 669
(3d Cir. 1999).................................................................................................4

*Magic Petroleum Corp. v. Exxon Mobil Corp.*, 218 N.J. 390 (2014) ....................13

*Marks v. Struble*, 347 F. Supp. 2d 136 (D.N.J. 2004) ............................................25

*Mejia v. Quest Diagnostics, Inc.*, 241 N.J. 360 (2020)....................................17, 18

*Munchak v. Ruckno*, 692 Fed. Appx. 100 (3d Cir. 2017) ........................................25

*Pharm. Sales & Consulting Corp. v. J.W.S. Delavau Co.*, 106 F. Supp.
2d 761 (D.N.J. 2000) ..................................................................................26

*Phillips v. County of Allegheny*, 515 F.3d 224 (3d Cir. 2008) ................................25

*Rowe v. Bell & Gossett Co.*, 239 N.J. 531 (2019) ............................................17, 24

*Summerfield v. Equifax Info. Servs. LLC*, 264 F.R.D. 133 (D.N.J. 2009) ..............................................................................................................4

*United States v. Compaction Sys. Corp.*, 88 F. Supp. 2d 339 (D.N.J. 1999) ..............................................................................................................4

*Young v. Latta*, 123 N.J. 584 (1991) ................................................................17, 24

**Statutes**

N.J.S.A. § 58:10C-16(i) ..........................................................................................13

N.J.S.A. § 58:10C-16(b) .........................................................................................13

**Rules**

Civ. R. 7.1(i) .............................................................................................................4

Fed. R. Civ. P. 15(a)(2) ..........................................................................................26

Local Civil Rule 7.1(i) ..............................................................................................4

Rule 12(b)(6) ...........................................................................................................25

## PRELIMINARY STATEMENT

Third-Party Plaintiff Environmental Waste Management Associates, LLC ("EWMA") respectfully submits this memorandum of law in support of its motion for reconsideration of the Court's February 5, 2021 Order and Opinion dismissing the Third-Party Complaint for contribution and indemnification against Defendants Langan Engineering and Environmental Services, Inc. ("Langan") and John Wood Group PLC as successor in interest to AMEC PLC ("AMEC").[1]

Reconsideration is appropriate where, as here, it is necessary to correct an error of law or fact. Most respectfully, EWMA submits that the Court's February 5, 2021 Order and Opinion dismissing the Third-Party Complaint contained errors of law and fact such that the Third-Party Complaint should not have been dismissed with prejudice and without the opportunity to amend.

Plaintiff BRG Harrison Lofts Urban Renewal, LLC ("Plaintiff") asserts various state claims against EWMA including claims for breach of contract and professional negligence/malpractice related to the environmental consultant services EWMA performed and the presence and extent of mercury contamination on real property and improvements located in Harrison, New Jersey (the "Property"). Plaintiff alleges that as a result of EWMA's careless work regarding the presence of

---

[1] EWMA is not seeking reconsideration of the Court's determination on the indemnification claims.

1

mercury on the Property to its detriment it entered into two agreements: (1) an Indemnity and Settlement Agreement ("2014 GE Settlement and Release Agreement") with GE, which released GE from claims Plaintiff may have for causing the mercury contamination; (2) an agreement with the owner of the V.I.P. Realty Associates ("VIP") for the purchase of the Property which released VIP from any future obligation it may have had to share in the costs of any mercury remediation ("2015 VIP Purchase and Release Agreement").

The Court erred by overlooking pertinent facts as alleged by EWMA that Langan's alleged negligence for purposes of contribution was concurrent, successive and causative of the same injury to Plaintiff as EWMA. Specifically, EWMA alleged that (1) Langan, which replaced EWMA as Plaintiff's environmental consultant, reviewed the same environmental information, data and reports as EWMA prior to BRG entering into the GE Settlement and Release Agreement and the VIP Purchase; (2) Langan failed to alert Plaintiff to the alleged improper methodologies and inaccuracies in the testing reports; (3) Langan failed to advise Plaintiff that based upon mercury being detected in buildings where it was not previously detected and being detected and at levels higher level and different locations within the building in which it was detected that additional testing should be performed before Plaintiff entered into the GE Settlement and Release and the VIP Purchase and Release Agreement. Just as Plaintiff claims it would not have entered into either of these

agreements had it been properly advised of the full extent of mercury contamination at the Property by EWMA the same holds true for concurrent and successive professional negligence of Langan.

Similarly, the Court overlooked the fact that the alleged acts of AMEC are also concurrent to the alleged tortious acts of EWMA.  Indeed, in its Amended Complaint Plaintiff maintains that "but for" the wrongful actions of AMEC, Plaintiff would not have entered into the GE Settlement and Release Agreement.  Thus to the extent that EWMA is liable, AMEC's and Langan's negligence occurred during the same time and contributed to the same injury alleged by Plaintiff, the costs associated with remediating the mercury contamination at the Property.

Based on these overlooked facts, the Opinion incorrectly relies on the factually distinguishable *Cherry Hill Manor Assocs. v. Faugno*, 182 N.J. 64 (2004) rather than to the directly analogous *LaBracio Family P'ship v. 1239 Roosevelt Ave., Inc*., 340 N.J. Super. 155 (App. Div. 2001). Therefore, EWMA respectfully requests this Court grant its motion for reconsideration.

## **LEGAL ARGUMENT**

### **POINT I**
### **STANDARD OF REVIEW**

Motions for reconsideration are not expressly recognized in the Federal Rules of Civil Procedure. *United States v. Compaction Sys. Corp.*, 88 F. Supp. 2d 339, 345 (D.N.J. 1999). In the District of New Jersey, Local Civil Rule 7.1(i) governs motions for reconsideration and creates a specific procedure by which a party may, within 14 days of the entry of an order, request that the Court reconsider any decision if there are "matters or controlling decisions which counsel believes the Judge…has overlooked." *See* L. Civ. R. 7.1(i); *see also Interfaith Cmty. Org. v. Honeywell Int'l., Inc.*, 215 F. Supp. 2d 482, 507, n.12 (D.N.J. 2002); *Bowers v. Nat'l. Collegiate Athletics Ass'n.*, 130 F. Supp. 2d 610, 612 (D.N.J. 2001). "The word 'overlooked' is the operative term and has been consistently interpreted as referring only to facts and legal arguments that might reasonably have resulted in a different conclusion had they been considered." *Summerfield v. Equifax Info. Servs. LLC*, 264 F.R.D. 133, 145 (D.N.J. 2009).

Motions for reconsideration are appropriate where there is: "(1) an intervening change in the controlling law; (2) the availability of new evidence that was not available when the court granted the motion . . . ; or (3) *the need to correct a clear error of law or fact or to prevent manifest injustice.*" *Max's Seafood Cafe ex rel. Lou-Ann, Inc. v. Quinteros*, 176 F.3d 669, 677 (3d Cir. 1999) (emphasis added); *see*

4

*also Lazaridis v. Wehmer*, 591 F.3d 666, 669 (3d Cir. 2010). Courts will grant a motion for reconsideration where the prior decision overlooked a legal or factual issue that may alter the disposition of the matter. *In re Hlywiak*, 573 F. Supp. 2d 871, 873 (D.N.J. 2008).

## POINT II
### RECONSIDERATION IS APPROPRIATE BECAUSE THE COURT OVERLOOKED LEGAL AND FACTUAL ISSUES THAT MAY ALTER THE DISPOSITION OF THIS MATTER

In the February 5, 2021 Opinion and Order, the Court misinterpreted *Cherry Hill* and overlooked pertinent facts in making its strained analogy to the case at bar. The Court erred in not relying on the directly analogous factual situation in *LaBracio*, a case that *Cherry Hill* itself admits "rightly apportioned" joint tortfeasor contribution liability. *See Cherry Hill*, 182 N.J. at 76. Any alleged negligence of EWMA in failing to detect the more significant mercury issues does "not cancel out" AMEC's and Langan's similar "negligence and [their] relationship to the damages sustained" in remediating the Property because Plaintiff was not fully aware of the contamination prior to entering into the 2014 GE Settlement and Release Agreement or the 2015 VIP Purchase and Release Agreement. *LaBracio*, 340 N.J. Super. at 165. As the facts alleged within the Third Party Complaint are factually distinguishable and critically different from those presented in *Cherry Hill*, the Court erred in its reliance on the same, warranting reconsideration.

**A.      The Court Overlooked Pertinent Facts in its February 5, 2021 Opinion**

Plaintiff's *own complaint* references the same exact negligence against AMEC and the same exact harm that it asserted against EWMA. Although Plaintiff strategically does not make affirmative claims against Langan, the Complaint acknowledges that both AMEC and Langan were environmental consultants responsible for providing Plaintiff with information regarding environmental conditions at the Property and that both had access to AET's mercury vapor report and reviewed it *before* Plaintiff entered into 2014 GE Settlement and Release Agreement and the 2015 VIP Purchase and Release Agreement. AMEC and Langan should not be able to circumvent liability because Plaintiff strategically did not name them in this action, despite their negligence causing the same harm to Plaintiff.

**1.      Plaintiff's Allegations**

Plaintiff's overarching allegation is that it was not aware of the full extent of the mercury contamination on the Property prior to entering into the 2014 GE Settlement and Release Agreement or the 2015 VIP Purchase and Release Agreement. The allegations against EWMA are vital, as they provide the exact same basis for EWMA seeking contribution against AMEC and Langan.

The Property at issue was previously owned by GE, who historically utilized the property to manufacture incandescent light bulbs. In 1977, the property was purchased by VIP. In 2012, Plaintiff and VIP entered into an Agreement of Sale for

the Property. In response, Plaintiff broadly retained EWMA as its environmental consultant to investigate environmental contamination at the subject site in connection with Plaintiff's potential purchase of the Property.

EWMA then retained Accredited Environmental Technologies, Inc. ("AET") to conduct a mercury vapor survey of the Property's three buildings. AET's mercury vapor survey only identified detectable traces of mercury vapor on the third floor of Building C. This report was reviewed by EWMA, summarized by EWMA for Plaintiff's review, and subsequently incorporated into the 2013 Preliminary Assessment Report for the Property.

In August 2013, sampling performed by AMEC on the first floor of Building C identified mercury vapors, which were not previously identified in AET's reporting. Plaintiff alleges that it forwarded the results to EWMA to comment and advice, but EWMA failed to respond or advice regarding the significance of the new findings.

In August of 2014, Plaintiff replaced EWMA with Langan for purposes of providing environmental consulting services in connection with the Property including the purchase of the Property. Critically, as alleged in EWMA's Third Party Complaint, EWMA was replaced by Langan when its principal Kaufman left EWMA and became employed by Langan, continuing to provide work to Plaintiff for the Property. Therefore, not only are Langan and EWMA successive

environmental consultants in the time period prior to Plaintiff's alleged injury, but any alleged negligence and/or knowledge of EWMA is imputed to Langan by virtue of Mr. Kaufman.

Thereafter, on November 5, 2014, Plaintiff and GE entered the 2014 GE Settlement Release Agreement which released GE from claims Plaintiff may have had related to certain environmental costs and claims, and limited Plaintiff's ability to recover future costs and damages against GE.

On June 9, 2015, Plaintiff entered into the 2015 VIP Purchase and Release Agreement for the purchase of the Property, which allegedly released VIP from any future obligation it may have had to share in the costs of any mercury remediation.

In October 2015, Langan conducted an additional mercury screening. The results were entirely inconsistent with AET's Mercury Report, which as previously stated, only identified detectable traces of mercury vapor in two areas on the third floor of Building C. Langan detected mercury vapors in Buildings A, B, as well as in Building C in areas previously not detected and at significantly higher levels in the limited areas where mercury vapors had been than previously reported.

Thereafter, allegedly additional sampling confirmed extensive mercury contamination. In 2019, it was determined by GE that the reuse of the buildings was not feasible. Buildings A, B, and C which BRG had entered to repurpose are presently in the process of being demolished.

## 2.      Plaintiff's Allegations Against EWMA

Plaintiff asserts that EWMA, as its environmental consultant, knew or should have known that AET's mercury survey was deficient in its scope, manner, methodology, and reporting. Plaintiff further alleges that EWMA should have questioned the results, should have questioned and commented on the August 2013 sampling performed by AMEC on the first floor of Building C that identified mercury vapors not previously identified in AET's reporting, and should have recommended further testing.

Plaintiff alleges that as a result of EWMA's careless work regarding the presence of mercury on the Property to its detriment, it entered into the 2014 GE Settlement and Release Agreement and the 2015 VIP Purchase and Release Agreement. Plaintiff claims that because it entered into these agreements, it has suffered significant damages relating to the cost of remediation and demolishing and rebuilding the buildings as a result of the mercury contamination that it allegedly did not discover until after it purchased the Property.

## 3.      The Court Overlooked Langan's Concurrent Negligence in its Role as EWMA's successor and its Additional Knowledge Prior to Plaintiff Entering into the Two Vital Agreements

Like the allegations asserted by Plaintiff against EWMA, we assert that Langan reviewed AET's mercury survey and the contrary results contained in AMEC's 2013 mercury vapor screening report *before* Plaintiff entered into the 2014

GE Settlement and Release Agreement and 2015 VIP Purchase and Release Agreement. Despite EWMA's former project lead for the Property now working at Langan as environmental consultant for the Property, Langan similarly did not advise Plaintiff that the methodology was improper, that the testing was performed with the wrong instrument and reported under the wrong standard, or that the results were inaccurate or questionable. Langan also did not advise Plaintiff that additional testing should be performed. Thus, the very claims that Plaintiff asserts against EWMA are properly asserted by EWMA against Langan and should have been asserted by Plaintiff against Langan.

Pertinently, the Court overlooked that after replacing EWMA, and prior to Plaintiff entering into the GE Settlement and Release Agreement and the VIP Purchase and Release Agreement, Langan in its role as Plaintiff's new environmental consultant had access to and *reviewed* EWMA's environmental reports and AET mercury vapor survey. *See* D.E. 218, at 12 (explaining that the Third Party Complaint "alleges only that Langan knew about AET's survey"). This is the same report that Plaintiff claims it "relied upon . . . in negotiating the [2014 GE Settlement and Release Agreement] and *would not have entered into this agreement* had EWMA and AET provided accurate information regarding the mercury contamination at the Site." D.E. 12, ¶58 (emphasis added). Further, Plaintiff asserted that EWMA, as the consultant, should have known, based on the historical

operations at the Site, that AET's mercury vapor results were highly questionable. D.E. 12, ¶45. EWMA likewise asserts that Langan also should have known, based on the historical operations at the Site, that AET's mercury vapor results were highly questionable and advised Plaintiff that more appropriate and additional testing should be performed.

Additionally, after replacing EWMA and prior to Plaintiff entering into the 2014 GE Settlement and Release Agreement and the 2015 VIP Purchase and Release Agreement, Langan was provided AMEC's 2014 Remedial Investigation Sampling, which detected mercury contamination above the governing standards that was not previously detected by AET. Even after reviewing this information, which EWMA did not have access to, Langan did not alert Plaintiff of these inaccuracies, resulting in Plaintiff entering into the agreements, and incurring damages to remediate the mercury issues at the Property.

With all of this information, Langan was in a position, before Plaintiff entered into either of the agreements, to alert Plaintiff to the potential extent of the mercury issues and of the alleged deficient prior testing. Langan, as an environmental consultant, did not advise Plaintiff of these inaccuracies or suggest subsequent sampling.  Rather, Langan waited to conduct additional mercury testing until *after* Plaintiff entered into both agreements.

Pertinently, the Court overlooked the fact that EWMA was generally retained "*to investigate environmental contamination at the subject site* in connection with due diligence [Plaintiff] was performing on the Site" prior to purchase. D.E. 12, ¶5 (emphasis added). EWMA was not only retained "for environmental due diligence services." *See* D.E. 218, at 10. As the environmental consultant, Plaintiff asserts that EWMA failed to detect the extent of the mercury contamination. As EWMA's successor, Langan also was required to advise on all the contamination at the property. Thus, the Opinion's statement that "Langan was [not] retained to perform a mercury vapor survey on the buildings, supervise AET, [] do anything with regard to mercury contamination" or "advise[] Plaintiff that additional mercury testing was needed," blatantly overlooks Langan's broader environmental consultant role and the allegations asserted by EWMA. *See* D.E. 218, at 11.

Thus, as the successor environmental consultant in the same transaction on which EWMA provided consulting services, Langan negligently failed to advise Plaintiff as to the full extent of the mercury contamination, resulting in the same injury and damages Plaintiff has alleged with regard to EMWA.

4.      **The Court Overlooked AMEC's Role as EWMA's counterpart and its Additional Knowledge Prior to Plaintiff Entering into the Two Vital Agreements**

The facts alleged in Plaintiff's First Amended Complaint establishes the same alleged concurrent negligence, injury and damages against EWMA and AMEC.

12

AMEC was EWMA's counterpart as the environmental consultant for GE and the Licensed Site Remediation Professional (LSRP) for the Property.

Under New Jersey law, LSPRs "are individuals who independently oversee the cleanup of contaminated sites, ensuring that the process is conducted effectively and in compliance with New Jersey statutes and regulations." *Magic Petroleum Corp. v. Exxon Mobil Corp.*, 218 N.J. 390, 400 n.2 (2014). Under New Jersey's Site Remediation Reform Act ("SRRA"), N.J.S.A. §§ 58:10C-1 to -29, a LSRP must "exercise reasonable care and diligence, and shall apply the knowledge and skill ordinarily exercised by licensed site remediation professionals in good standing practicing in the State at the time the services are performed." N.J.S.A. § 58:10C-16(b) (emphasis added). In exercising its professional judgment, a LSRP must "make a good faith and reasonable effort to identify and obtain the relevant and material facts, data, reports and other information evidencing conditions at a contaminated site." N.J.S.A. § 58:10C-16(i). Within this role, as well as its consulting role,[2] AMEC was responsible for keeping GE and Plaintiff apprised of

---

[2] As described more fully in EWMA's Opposition brief, environmental consultants "owe a duty to those persons who fall normally and generally within a zone of risk created by the tortious conduct." *Grand St. Artists v. GE*, 19 F. Supp. 2d 242, 248 (D.N.J. 1998). "[A] plaintiff may be found within a range of harm emanating from tortfeasor's activities is more significant than whether the parties stand in a direct contractual relationship." *Id.*

the environmental conditions at the Property and ensuring data reflected the conditions at the Site. It did not do so here.

Relevantly, Plaintiff alleges that AMEC failed to advise on the extent of the mercury contamination at the Property and in fact hid such information. After EWMA was replaced, but still before Plaintiff entered into either of the vital agreements, AMEC conducted Remedial Investigation Sampling between May and July of 2014. This testing *also* detected mercury contamination above the governing standards, which had not been previously detected by AET. Plaintiff alleges that AMEC did not include these sampling results within its September 2014 Preliminary Assessment. Despite having additional information that indicated mercury vapor intrusion concerns, AMEC adopted and appended AET's analysis from EWMA's January 2013 Preliminary Assessment Report into its own report. Plaintiff was provided with AMEC's Preliminary Assessment, which lacked the updated sampling results, in advance of entering into the 2014 GE Settlement and Release Agreement. D.E. 12, ⁋ 56.

Plaintiff has directly asserted that AMEC caused its injury *just like* its allegations against EWMA, yet strategically did not name AMEC as a direct defendant in this action. Within the First Amended Complaint, Plaintiff asserts against EWMA:

> BRG further relied upon the information provided by EWMA and AET in negotiating the Indemnification and Settlement Agreement and *would not have entered into*

> *this agreement had EWMA and AET provided accurate information regarding the mercury contamination at the Site.*
>
> [D.E. 12, ¶58 (emphasis added)]

Identically, Plaintiff claims the following about AMEC:

> BRG relied upon the information provided by AMEC (on behalf of GE) in negotiating the Indemnification and Settlement Agreement and *would not have entered into this agreement had AMEC provided accurate information regarding the mercury contamination at the Site within the Preliminary Assessment.*
>
> [D.E. 12, ¶57 (emphasis added)]

These are the exact same negligence and damages claims asserted by Plaintiff against EWMA. Despite Plaintiff's own complaint asserting Plaintiff would not have entered into either agreement had AMEC advised on the contamination at the Property, the Court overlooked AMEC's and EWMA's similar role when finding their "positions, responsibilities, and conduct . . . [were] very different." *See* D.E. 218, at 14.

## 5. The Court Overlooked that Plaintiff Suffered the Same Harm from EWMA, AMEC, and Langan

To the extent that Plaintiff was damaged by EWMA, those damages flow from the extensive contamination at the Site. As described above, any alleged negligence asserted against EWMA can also be asserted against AMEC and Langan for failing to detect and advise on this contamination prior to Plaintiff entering into either of the vital transactions.

Despite this, the February 5, 2021 Opinion found that AMEC and Langan "failed Plaintiff in different ways at different times," and thus harmed the Plaintiff in different ways than EWMA. *See* D.E. 218, at 12, 13. The Opinion categorized the allegations as "EWMA fail[ing] to fully detect mercury contamination in a building, while Langan read the reports of others and failed to advise Plaintiff that additional testing was needed." *See* D.E. 218, at 12. Notably, the Opinion concludes: "A failure to detect mercury, when one is contracted to do so, is not the same as a failure to advise that others did not do their work adequately on the basis of a larger body of information." *See* D.E. 218, at 13.

These statements misconstrue the same harm requirement. Joint tortfeasor liability does not require the tortfeasors to commit the same tort. Rather, the requirement is common liability creating a single injury to the plaintiff. *See Erkins v. Case Power & Equip. Co.*, 164 F.R.D. 31, 33 (D.N.J. 1995) ("New Jersey case law consistently holds that joint tortfeasors may be held liable under different theories of recovery."); *Cartel Capital Corp. v. Fireco of New Jersey*, 81 N.J. 548, 566-67 (1980). Even if Langan, AMEC, and EWMA allegedly committed different acts of professional negligence against Plaintiff, all of these cumulative acts allegedly caused Plaintiff's injury: that it entered into both agreement and incurred costs of remediating the mercury contamination at the Site. Thus, Plaintiff suffered the same harm as a result of the conduct of each of these environmental consultants.

16

It also misconstrues the time element for joint tortfeasor liability. The torts committed against a plaintiff may occur at different times, as long as it causes the same damage to the plaintiff. *See LaBracio*, 340 N.J. Super. at 158-59, 65. This case can be analogized to medical malpractice cases, where numerous medical professionals fail to diagnose a plaintiff's condition, or asbestos actions, where the cumulative exposure to the defendants' products contributes to the plaintiff's mesothelioma.[3] *See e.g. Mejia v. Quest Diagnostics, Inc.*, 241 N.J. 360 (2020) (noting it was "undisputed" that the laboratory defendants properly filed a third-party complaint for contribution against the gynecologist and family practitioner as joint tortfeasors for also failing to diagnose the plaintiff's cervical cancer); *Rowe v. Bell & Gossett Co.*, 239 N.J. 531 (2019) (commenting that the defendants were joint tortfeasors because they exposed the plaintiff to asbestos-containing products at different times, which caused mesothelioma); *Young v. Latta*, 123 N.J. 584 (1991) (explaining three doctors and the hospital were joint tortfeasors for failing to diagnose an injury that resulted in plaintiff's blindness).

---

[3] Indeed, in asbestos actions, the plaintiff's alleged injury is often the result of different torts resulting from different products or conduct over broad periods of time; for example, plaintiff's product liability exposure to a manufacturer's asbestos-containing valve aboard a United States Navy ship in the 1960s and negligent exposure to a contractor's use of asbestos-containing pipe insulation in the 1970s. Pursuant to New Jersey law, both of these parties are joint tortfeasors subject to contribution claims for plaintiff's alleged injury. The alleged negligence of AMEC and Langan here for purposes of contribution are clearly less attenuated.

In both the medical malpractice and asbestos context, the negligent acts take place before the plaintiff learns of the harm, sometimes over many years. Similarly, here, all of the alleged negligent acts asserted by Plaintiff and EWMA which allegedly resulted in Plaintiff not learning of the extent of the mercury contamination occurred prior to entering into the 2014 GE Settlement and Release Agreement and the 2015 VIP Purchase and Release Agreement.  Here, the extent of the mercury contamination was not discovered until *after* Plaintiff entered into both the 2014 GE Settlement and Release Agreement and 2015 VIP Purchase and Release Agreement. Thus, Plaintiff's injury, purchasing a property contaminated with mercury, occurred because *all the environmental consultants* allegedly among several negligent acts failed to detect the contamination, just as the lab, family practitioner, and gynecologist all failed to detect the plaintiff's cancer in *Mejia*.

Thus, it is indisputable the Plaintiff suffered the same harm as a result of the allegedly negligent acts of EWMA, AMEC, and Langan. Contrary to the findings of the Court, the harms allegedly suffered by Plaintiff from AMEC, Langan, and EWMA are not different because they resulted in Plaintiff entering into these agreements and incurring costs to remediate the Property.  Thus, the Court's ruling to the contrary was an error of law.

**B.     Based on Overlooking Pertinent Facts, the Court Improperly Relied on *Cherry Hill* instead of *LaBracio*.**

18

It is clear that AMEC and Langan had the exact same information as EWMA (in fact they had more), during the same time period, and both of their tortious actions resulted in Plaintiff entering into the 2014 GE Settlement and Release Agreement and the 2015 VIP Purchase and Release Agreement, resulting in Plaintiff's damages to address the significant mercury issues. This is directly analogous to *LaBracio*, where all the attorneys working concurrently in the same transaction were joint tortfeasors for causing the plaintiff's damages, and critically different than *Cherry Hill*, where each attorney was retained after its predecessor caused separate and distinct injuries to plaintiff with different damages. The Court's reliance on *Cherry Hill* was therefore an error of law.

In *Cherry Hill*, the plaintiff's first attorney failed to record the mortgage involved in a property transaction. 182 N.J. at 68. After plaintiff was injured due to this failure to record, the plaintiff retained his second attorney to recover his investment in the property; however, he failed to name the first attorney as a defendant in the lawsuit. *Id.* at 68. The plaintiff ultimately dismissed the action as he was "[f]aced with no prospect of recovery" as the only named defendant, the seller, had his debts discharged in a bankruptcy action. *Id.*

Having experienced two different cognizable acts of malpractice at different times, in different transactions, by two separate attorneys, the plaintiff then retained his third lawyer to recover the damages from the first attorney's failure to secure his

19

investment. *Id.* The third attorney did not amend the complaint to assert a claim directly against the second attorney, resulting in summary judgment being entered for the first attorney, the dismissal of the third-party complaint and the allegations against the second attorney, and the barring of plaintiff's claim under entire controversy doctrine. *Id.* at 69-70.

With these specific facts, the Supreme Court found the attorneys, each hired to address the malpractice of their successors were not joint tortfeasors as they did not share "common liability *at the time* plaintiff's separate cause of actions accrued." *Id.* at 72-73 (emphasis in the original). Rather, each of the attorneys' "alleged malpractice constituted separate torts at disparate times with different damages covering a six-year period." *Id.* at 73.

Additionally, the Supreme Court itself distinguished the case from *LaBracio*, reasoning that "joint tortfeasor contribution liability was rightly apportioned" based on the facts presented in that case. 182 N.J. at 76. In *LaBracio*, attorneys on both side of the real estate transaction failed to record the mortgage. 340 N.J. Super. at 158. Thereafter, the buyer retained new counsel, who informed the seller's counsel that he had the mortgage. Despite the knowledge that the mortgage had not yet been recorded, the seller's attorney did not inquire further, and the buyer's new attorney failed to timely record it. *Id.* at 159. Due to the delay, the mortgage lost priority, harming the plaintiff. *Id.*

20

The Appellate Division found the buyer's new attorney was a joint tortfeasor, reasoning each attorney failed to timely file the mortgage as part of the same real estate transaction, which resulted in the mortgage losing priority and harming the plaintiff. *Id.* at 159, 165. Further, the negligence of the buyer's and seller's original attorneys did "not cancel out [the new attorney's] negligence and its relationship to the damages sustained." *Id.* at 165.

Preliminarily, the *Cherry Hill* Court was very concerned with repose as the case had essentially turned into a liability for life merry-go-round for the attorneys involved. The Court explained that "[w]hen, as here, a party has secured a judicial adjudication in the party's favor, society's interest in the finality of judgments and the repose accorded to them militates strong in favor of barring a subsequent action for contribution." 182 N.J. at 74. This concern is absent from the case at bar. There are no other actions filed and this case is still within its infancy. Unlike the attorneys in *Cherry Hill*, EWMA is not trying to "breathe new life into [an] otherwise barred action[]." *Id*. Thus, the Court's consideration in *Cherry Hill* was through the lens of repose, making it procedurally as well as factually distinguishable.

Here, concurrent and successive environmental consultants were jointly advising and/or providing critical information to Plaintiff on the environmental conditions at the Property *prior* to Plaintiff entering into the 2014 GE Settlement and Release Agreement and 2015 VIP Purchase and Release Agreement. This situation

is directly analogous to *LaBracio*, where all the attorneys working concurrently and successively were jointly liable for failing the plaintiff in the same transaction. It is starkly different than *Cherry Hill,* where the plaintiff was the victim to *three separate successive* attorney malpractice actions, with each successor attorney being hired to help the plaintiff recover separate damages from the prior attorneys' malpractice. 182 N.J. at 68-72.

Hypothetically, *Cherry Hill* would be analogous *if* AMEC and Langan are not named defendants. Under this hypothetical fact pattern, after Plaintiff obtains a judgment in this action, Plaintiff would retain a new attorney to sue its current attorney for *not naming* AMEC and Langan as direct defendants for their obvious negligence in the case at bar and Plaintiff's former attorney seeks to file a third party complaint naming AMEC and Langan as joint tortfeasors. That factual situation comports with *Cherry Hill*. However, that is not the situation plead in either the First Amended Complaint or the Third Party Complaint, making *Cherry Hill* factually distinguishable.

The Opinion misinterpreted *Cherry Hill*'s joint liability and same harm requirement by conflating that the torts must occur at the same time, and not at the time plaintiff's damages arise. With this confusion, the Opinion incorrectly applied the law to the facts in this case. Therefore, its conclusion that AMEC and Langan

allegedly committed "separate torts at disparate times" represents a clear error of law, warranting reversal. *See* D.E. 218, at 12.

Had the Court not overlooked critical facts about AMEC and Langan, it would have realized how *LaBracio* presents a seamless analogy to the case at bar. Similar to *LaBracio*, where the buyer's original and subsequent attorneys were joint tortfeasors for both failing to file mortgage, here, EWMA and Langan were both retained to advise on and/or investigate the environmental conditions at the Property and their tortious acts resulted in Plaintiff entering into the 2014 GE Settlement and Release Agreement and 2015 VIP Purchase and Release Agreement.  When EWMA was replaced, Plaintiff had not yet entered into the 2014 GE Settlement and Release Agreement and 2015 VIP Purchase and Release Agreement. Thus, like the subsequent attorney that was retained to complete the transaction in *LaBracio*, Langan was retained to continue advising Plaintiff for these agreements. Further, Langan had access to AET's mercury vapor survey as well as AMEC's sampling. As alleged against EWMA, EMWA alleges that Langan failed to detect errors in AET's report, suggest additional sampling, and advise Plaintiff on the full extent of the mercury contamination at the Property just like the original and successive attorneys in *LaBracio*.

Further, *LaBracio* dispels the Court's finding that "EWMA and AMEC were engaged by different clients on opposite sides of a real estate transaction." *See* D.E.

218, at 14. Like the opposing attorneys in *LaBracio* that were involved in the transaction, knew the deed was not recorded, and failed to inquire further, here, AMEC was provided AET's mercury vapor survey and conducted its own mercury testing at the Site in 2013, and further Remedial Investigation Sampling in 2014. This sampling identified inconsistent mercury results than those found within AET's survey. Despite this, like Plaintiff's allegations against EWMA, EWMA contends that AMEC did perform the mercury sampling at the Property it was required to do as the LSRP.  Further as alleged by Plaintiff AMEC failed to advise Plaintiff of these inconsistencies prior to the execution of the 2014 GE Settlement and Release Agreement.

New Jersey law has a strong public policy of "promot[ing] the fair sharing of the burden of judgment by joint tortfeasors" in order to "prevent a plaintiff from arbitrarily selecting his or her victim."[4] *Rowe*, 239 N.J. at 553 (quoting *Holloway v. State*, 125 N.J. 386, 400-01 (1991); *see also Young*, 123 N.J. at 589. This is exactly what happened here. Plaintiff should not be allowed to arbitrarily blame only

---

[4] Indeed, Plaintiff has solely alleged New Jersey common law claims against EWMA in this matter, which are governed by and subject to New Jersey law, and EWMA's Third Party Complaint likewise seeks New Jersey common law claims for contribution and indemnification. This case is only in federal court due to the Plaintiff's CERCLA claims asserted against defendant GE, who has now been dismissed from this matter due to a settlement with Plaintiff. As such, there is a strong policy argument for permitting contribution claims where they would clearly be permitted if this matter had been brought in the Superior Court of New Jersey.

EWMA for the negligent acts committed by AMEC and Langan during the same time period, which resulted in the same injury. As such, under New Jersey law, and in the interest of justice, the dismissal of the Third Party Complaint was an error because AMEC and Langan contributed to Plaintiff's harm.

## POINT III
## IN OVERLOOKING THESE PERTINENT FACTS AND LAW, THE FEBRUARY 5, 2021 OPINION ERRED IN BY DISMISSING THE COMPLAINT WITH PREJUDICE

Within the Third Circuit, it is well established that before dismissing a complaint under Rule 12(b)(6), "a district court must permit a curative amendment, unless an amendment would be inequitable or futile." *Phillips v. County of Allegheny*, 515 F.3d 224, 236 (3d Cir. 2008) (citing *Grayson v. Mayview State Hosp.*, 293 F.3d 103, 108 (3d Cir. 2002)). Amendment is only futile "if the amended complaint would not survive a motion to dismiss for failure to state a claim upon which relief could be granted." *Munchak v. Ruckno*, 692 Fed. Appx. 100, 102 (3d Cir. 2017) (internal citations omitted).

When considering futility, the district court "must accept allegations in the amended complaint as true and construe the allegations in the complaint in the light most favorable to the [third party] plaintiff." *Marks v. Struble*, 347 F. Supp. 2d 136, 150 (D.N.J. 2004). "Moreover, given the liberal standard applied to the amendment of pleadings, courts place a heavy burden on opponents who wish to declare the

proposed amendment futile." *Pharm. Sales & Consulting Corp. v. J.W.S. Delavau Co.*, 106 F. Supp. 2d 761, 764 (D.N.J. 2000); *see also See also CMR D.N. Corp. v. City of Phila.*, 703 F.3d 612, 629 (3d Cir. 2013) ("[T]he pleading philosophy of the Rules counsels in favor of liberally permitting amendments to a complaint."). Fed. R. Civ. P. 15(a)(2) (requiring that the Court "freely give leave [to amend] when justice so requires.").

Here, the Opinion found that amending the complaint would be "futile" because the factual allegations did not plausibly assert that Langan or AMEC are jointly liable with EWMA as tortfeasors under New Jersey law. *See* D.E. 218, at 15-16. As this brief makes clear, the Third-Party Complaint properly asserted facts sufficient to impose joint tortfeasor contribution on Langan and AMEC under New Jersey law, and ruling to the contrary was an error of law.

In dismissing the complaint with prejudice, the District Court essentially made "a conclusive determination on the merits" when determining the Third-Party Complaint was futile, rather than analyzing whether the facts asserted plausibly established a viable claim for contribution under New Jersey law. *See Pharmaceutical Sales*, 106 F. Supp. 2d at 764. At this stage of the litigation, EWMA has not had the benefit of discovery to fully develop the merits of the case. Following the liberal standard within the Third Circuit, and dictated by the Rules, EWMA should have been granted the opportunity to amend any alleged deficiencies within

the Third Party Complaint. Thus, based on the overlooked facts and significance of the *LaBracio* decision, dismissing the Third Party Complaint with prejudice was a clear error of law.

Had the Court granted leave to amend, EWMA would have timely submitted an Amended Third Party Complaint to address any alleged deficiencies. Rather than unnecessarily prolonging this action by seeking leave to amend, EWMA has provided a proposed Amended Third Party Complaint with the submission of this motion.

## **CONCLUSION**

Based upon the foregoing, EWMA respectfully requests that the Court grant

its Motion for Reconsideration Third Party Complaint in this matter.

BY:   *s/Timothy E. Corriston*
      _____
      Timothy E. Corriston
      Connell Foley LLP
      56 Livingston Avenue
      Roseland, NJ 07068
      973.535.0500
      973.535.9217
      *Attorneys for Defendant/Third Party*
      *Plaintiff, Environmental Waste*
      *Management Associates, LLC*

Dated:  February 17, 2021

28